**Rod TONEY et al., Plaintiffs,**

v.

**C. Jackson GRAYSON, Jr., et al.,
Defendants.**

**No. 72 Civ. 40.**

United States District Court,
S. D. New York.

Jan. 27, 1972.

Maurice A. Reichman, Nancy E. Leblanc, Robert Sugarman, Stephen Raphael, Carolyn M. Heft, New York City, for plaintiffs.

Whitney North Seymour, Jr., U. S. Atty., Southern District of New York, New York City (Stephen J. Glassman, Asst. U. S. Atty., of counsel), for defendant Price Commission.

MacMAHON, District Judge.

This is an application by plaintiffs for a preliminary injunction enjoining the defendant Albert A. Walsh, Administrator of the Housing and Development Administration of New York City, and the defendant Benjamin Altman, Commissioner of the Department of Rent and Housing Maintenance of New York City, from issuing rent increase notices without providing notification to tenants in accordance with Price Commission Regulation 301.502, 36 F.R. 25386. The cited regulation provides:

"§ 301.502 Notification:

In the case of a proposed rent increase to which the present lessee of the residence or other real property would be subject

(a) Requirement of 30 days' notice. The lessor must notify the lessee of the proposed rent increase at least 30 days before the date it is to become effective. . . ."

The motion, thus, turns on the narrow question of whether the above federal notice requirement applies to state and local rent control authorities. We hold that it does not and therefore deny plaintiffs' motion for a preliminary injunction.

Significantly, neither the defendant Walsh, the defendant Altman, nor the agencies which they represent are lessors. Thus, the notice provision upon which plaintiffs rely, does not, on its face, apply to the only defendants to whom this motion is directed. Nor does the notice provision apply to housing accommodations governed by local rent controls such as those involved here.

It is clear that from the inception of Phase II of the President's Economic Stabilization Program, the Price Commission ("Commission") intended and

proceeded with a separate system of rent stabilization for rent-controlled units. Thus, on November 22, 1971, the Commission announced a system for allowing rent increases on rent-controlled units authorized by state and local rent control agencies and further announced that it had "decided to allow established State and local rent control authorities *to operate on the basis of their existing standards and procedures.*" (Emphasis added.)

On December 16, 1971 the Commission formally promulgated Regulations 300.15 (g) and 300.15(h), 36 F.R. 23977. These regulations formally implemented the earlier announcements and permitted increases allowable under local rent controls. This position was reaffirmed on December 20, 1971 when the Commission reiterated the previously announced requirements relating to state or local methods of rent control. The Chairman of the Commission further stated: "We will leave rent controls at the local level in the hands of people familiar with local problems."

Finally, on December 30, 1971 the Commission republished regulations relating to rent-controlled housing which were substantially identical to those previously promulgated. Regulation 300.15 was replaced by Regulation 300.16, and the latter regulation contained almost identical language with respect to rent-controlled housing.

Thus, it is clear that the officers and agency charged with the administration of the federal price control program have consistently treated residential property subject to state and local rent regulation under a separate regulatory scheme and have expressly authorized local rent control authorities to operate under their own rules, regulations and procedures. Clearly, if local rent control laws are to function effectively, local procedures, including those pertaining to notice, must apply. Any doubt that this is so is laid to rest by an opinion letter of January 19, 1972 by the General Counsel of the Commission, W. David Slawson, to the effect that the 30-day notice requirements of Sections 301.501 and 301.502 "do not apply to rent-controlled units." That opinion letter states the continuing "intent of the Commission to treat rent-controlled units separately" with "no other notice requirement placed upon landlords of rent-controlled units" and goes on to say that "advance notice requirements would apply only if required by the rules of the rent control authority."

█ We think that the Commission's official interpretation, established by long practice and the opinion letter of its counsel, is of controlling significance. Surely, we should not substitute our views on the construction and application of the regulation for those of the agency charged with administering the program. Rather, we think we should bow to the interpretation given by those charged with the responsibility of administering the regulations. As the Supreme Court said in Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L. Ed.2d 616 (1965):

"When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. * * * 'Particularly is this respect due when the administrative practice at stake "involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." ' ' "

██ Plaintiffs, thus, fail to show a reasonable probability of ultimate success on the merits. A preliminary injunction is an extraordinary remedy and will not be granted except upon a clear showing of probable success on the merits and possible irreparable injury. Checkers Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir. 1969).

In light of the history of the administration of the federal price regulations respecting rent controlled housing, plain-

tiffs' chances of ultimate success are exceedingly dim. Nor do we think that plaintiffs show that the balance of hardships tips decidedly in their favor. This is not to say that plaintiffs will not suffer a hardship by an increase in rent. It is highly questionable, however, whether that burden amounts to an irreparable injury, for if plaintiffs are ultimately successful they can seek reimbursement from their landlords and, if necessary, set off excessive rentals paid toward the next month's rent.

Plaintiffs' hardship, we think, is outweighed by the hardship resulting to the defendants and the public if the preliminary injunction were granted. The Maximum Base Rents Program ("MBR") under the New York City rent control law was created to help ease the housing crisis in the city. A temporary professional and clerical staff was hired expressly for the purpose of implementing the program. These employees are retained at a cost to the city in excess of $100,000 per month.

In addition, by specific contract provisions the collective bargaining agreements entered into by the landlords and the building services employees would be nullified since all services agreed upon were directly predicated upon the implementation of the MBR Program. In such circumstances, a strike by such employees is by no means farfetched, thus creating substantial hardship for thousands of tenants.

The current pattern of owner and bank disinvestment, spreading deterioration, and abandonment would likely continue. Repair contracts entered into by landlords as a precondition to eligibility for the MBR Program would not be carried out. Finally, some 250,000 repairs have been made to date by owners seeking to qualify for the program, and a failure to implement it would seriously undermine the city's effort to motivate property owners to make necessary repairs in the future.

It would seem, therefore, that the balance of equities lies with the defendants Walsh and Altman and the general public which they represent rather than with the plaintiffs.

Accordingly, plaintiffs' motion for a preliminary injunction is in all respects denied and the temporary restraining order heretofore granted on January 25, 1972 is hereby vacated.

The foregoing memorandum constitutes this court's findings of fact and conclusions of law, in accordance with Rule 52, Fed.R.Civ.P.

So ordered.