198

GRASSROOTS ACTION, INC., and John
B. O'Sullivan, individually and on be-
half of all others similarly situated,
Plaintiffs,

v.

NEW YORK TELEPHONE COMPANY,
Defendant.

The CITY OF NEW YORK, Plaintiff,

v.

The NEW YORK TELEPHONE COM-
PANY, Defendant.

Nos. 72 Civ. 564, 72 Civ. 577.

United States District Court,
S. D. New York.

March 1, 1972.

Mark Alan Siegel, New York City, for plaintiffs Grassroots Action, Inc. et al.

J. Lee Rankin, Corp. Counsel, New York City, for plaintiff The City of N. Y.; Peter C. Demetri, Alexander Gigante, Jr., Francis I. Howley, Sheila A. Mahony, Martin S. Snitow, New York City, of counsel.

Davis, Polk & Wardwell, New York City, G. Wallace Bates, Edward L. Friedman, Raymond F. Scully, New York City, for defendant N. Y. Tel. Co.; Lawrence E. Walsh, Philip C. Potter, Jr., Guy M. Struve, New York City, Robert S. Snyder of counsel.

MacMAHON, District Judge.

Asserting violation of the Economic Stabilization Act of 1970,[1] as amended in 1971,[2] each of the plaintiffs moves for a preliminary injunction enjoining defendant New York Telephone Company from putting rate increases into effect.

In their underlying actions, plaintiffs seek a final judgment declaring that the price increases instituted by defendant are subject to, and governed by, the Economic Stabilization Act of 1970, as amended in 1971, and regulations promulgated thereunder; that an order of the New York State Public Service Commission ("P.S.C."), made on February 1, 1972, constitutes the *final* regulatory agency approval, which defendant was required to file with the Price Commission by its regulations before instituting rate increases; and that the rate increases instituted by defendant on February 3, 1972 violate the Act and regulations. Plaintiffs also seek a permanent injunction restraining defendant from instituting price increases specified in its revised tariffs and approved by an order of the P.S.C. on February 1, 1972. In addition, the Grass Roots plaintiffs seek an order compelling defendant to roll back its charges to those in effect prior to July 9, 1971.

The Economic Stabilization Act of 1970, as amended in 1971, authorized the President to issue such orders and regulations as he deems appropriate to stabilize prices, rents, wages, and salaries, and expressly states that "the adjustments necessary to carry out this program require prompt judgments and actions *by the executive branch of the Government*. The President is in a position to implement promptly and effectively the program authorized by this title." [3] The President delegated the administration of the Act to the Price Commission which was given rule-making power. The original regulation applicable to defendant provided in pertinent part that:

"§ 300.16  Regulated public utilities.

  (a) . . . [A] regulated public utility . . . may charge a price, rate, or tariff in excess of the base price if that increase has been approved by a regulatory agency . . . A public utility which had revenues of $100 million or more . . . shall inform the Price Commission of all requests for rate increases and immediately notify the Commission in writing of any agency order granting an increase. . . ." [4]

1.  Pub.L.No. 91–379, 84 Stat. 799.

2.  Economic Stabilization Act Amendments of 1971, Pub.L.No. 92–210, 85 Stat. 743.

3.  *Id.* Pub.L.No. 92–210, 85 Stat. 744 (emphasis added).

4.  6 C.F.R. § 300.16, 36 Fed.Reg. 23977 (Dec. 16, 1971).

■ We think it plain, therefore, that since its inception, rate increases by large public utilities, like defendant, are governed by the Economic Stabilization Act of 1970, as amended, and the regulations of the Price Commission, specifically, § 300.16. Significantly, the legislative history of the Act shows that Congress specifically refused to exempt public utilities from the Act.[5]

The regulations upon which plaintiffs base their contentions are complex and convoluted and do not lend themselves to easy and precise condensation.[6] Nevertheless, an attempt is necessary to an understanding of plaintiffs' contentions.

The recent amendments to § 300.16 of the Price Commission's regulations, which became effective on January 17, 1972, require any large public utility to report within five days any revenue increase in excess of 1% of its annual revenues, and direct that the report be accompanied by a certification by the appropriate agency, here, the P.S.C., setting forth "the former price, the new price, and the percentage increase," along with other economic data relevant to whether the increase is inflationary, the minimum adequate to assure safe service, to provide for necessary expansion, and to attract capital at reasonable cost. The amendments also require that the report be accompanied by a certificate of the regulatory agency certifying to detailed data customarily employed by regulatory bodies in fixing the rates of public utilities.

Under the amendments, upon filing the required report and certification, a public utility may charge a price in excess of the price in effect on January 16, 1972, unless, within a specified period of review, the Price Commission finds that the increase is inconsistent with the Price Commission's overall goal of holding average price increases across the economy to a rate of not more than 2½% per year.[7]

The amended regulations also require public utilities, like defendant, to report an approved increase to the Price Commission, together with the above-described certification, within five days after receiving *final* regulatory agency approval of a rate increase. During the ten-day period following receipt of the report, the Price Commission may require the public utility to furnish additional information, delay the effective date of the increase, suspend all or part of the increase pending further action, or limit, refuse, rescind, reduce, or modify the increase.[8]

Relying on these reporting and certification requirements, plaintiffs claim that an order of the P.S.C., made on February 1, 1972 (which approved defendant's detailed tariff revisions), rather than an order of the P.S.C., made on January 17, 1972 (which authorized defendant's overall increase in revenues), was "the final agency order approving the increase which was required to be filed with the Price Commission by amended § 300.16(j)."

The Grass Roots plaintiffs claim, in addition, that a certification of the P.S.C., contained in its January 17, 1972 order failed to state "the former price, the new price, and the percentage increase," as required by amended § 300.16 (e) (1), as to each of the thousands of individual new rates contained in the detailed tariffs approved by the P.S.C.'s order of February 1, 1972.

Defendant contends that the January 17, 1972 order of the P.S.C. fixing its overall price increase is the order which has the impact on the national economy, rather than the details of its tariffs set forth in the P.S.C.'s order of February 1, 1972, and is, therefore, the final order required to be filed with the Price Com-

---

5. S.Rep.No.92–507, 92d Cong., 1st Sess. (1971), 13 U.S.Cong.News 4010–4011.

6. The full text of original and amended § 300.16 is annexed as Appendix A and Appendix B, respectively.

7. 6 C.F.R. § 300.16(d) (e), 37 Fed.Reg. 652 (Jan. 14, 1972).

8. *Id.* § 300.16(j) (1).

mission within the meaning of the regulations. In any event, defendant asserts it has complied with the Price Commission's regulations regardless of whether the original or amended § 300.16 applies to its rate increases.

Finally, defendant contends that the issues raised here are the subject of pending action by the Price Commission and are, therefore, within its direct and continuing primary jurisdiction. The relief sought here, defendant argues, is therefore barred because plaintiffs have failed to exhaust their administrative remedies and because the granting of such relief would conflict with the broad discretion lodged by the Congress and the executive in the Price Commission to determine the proper disposition of cases before it. Plaintiffs assert, however, that no administrative remedy before the Price Commission is open to them.

It cannot be gainsaid that the issues raised by the parties respecting the validity of defendant's rate increases are important and substantial, and require prompt decision in the public interest. It is too plain for argument, however, that those issues all require the interpretation and application of regulations and procedures of the Price Commission, as well as resort to administrative expertise in determining whether the challenged rate increases are consistent with the anti-inflationary purposes and policies of the Economic Stabilization Act. Such questions, at least in the first instance, are singularly appropriate for administrative decision by the Price Commission, the agency charged with administration of the national regulatory scheme. This is particularly so in cases, like this, where the Price Commission is in fact exercising its jurisdiction over defendant's rates.

Whatever the situation at the time these actions and motions were filed, on the day before argument, the Price Commission made an order directed to defendant exercising its primary jurisdiction over the rate increases which are the subject of these actions in no uncertain terms. That order recites that the Price Commission "is in the process of reviewing" the rate increases which plaintiffs challenge by these motions and "will also conduct public hearings on the development of new policies and procedures for the regulation of price increases by utilities." It then recites that the purpose of the order is "to allow time to consider the rate increase of your company and, at the same time, maintain the status quo and insure that your customers and the public will be protected" in the event "your rate increase should be limited, rescinded, reversed or modified." In order to accomplish these purposes, the order directs defendant to do two things:

(1) Deposit the difference between the amounts collected by defendant under the tariffs which became effective on February 3, 1972 and the amounts which would have been collected under the pre-February 3, 1972 tariffs in an escrow account for possible refund to subscribers with 7% interest or for such other disposition as the Price Commission may order; and

(2) Reduce the rates for coin telephone calls and hotel guest calls to the pre-February 3, 1972 levels as soon as the necessary rearrangements can be made, but not later than February 23, 1972, because such calls "are not readily subject to refund in case a refund should be found necessary." [9]

Plaintiffs, thus, seek injunctions against rate increases by defendant

---

9. We think the Price Commission's order, with its refund and rollback provisions, undermines plaintiffs' attempt to show irreparable injury since, if the increase in rates is reversed or modified, subscribers can claim refunds and the rollback to February 3, 1972 rates adequately protects hotel guests and users of coin-operated telephones, leaving only a relatively minimal monetary loss to such users during the period from February 3, 1972 to February 23, 1972. See Toney v. Grayson, 339 F.Supp. 112 (S.D.N.Y., 1972); New York Tel. Co. v. Public Serv.

which are the subject of pending action by the Price Commission.

Obviously, the complaints and affidavits submitted on these motions present underlying issues of fact in the complex field of public utility rates not within the conventional expertise of judges and requiring the interpretation of a maze of administrative regulations, the exercise of administrative discretion, and specialized competence. The threshold question for our decision, therefore, is whether the relief sought by these actions and motions is barred by the doctrines of primary jurisdiction and exhaustion of administrative remedies. We hold that it is.

At least since Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Later the Supreme Court taught, in McKart v. United States, 395 U.S. 185, 193–194, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969), that the policy underlying the doctrine is

> "the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages."

All of the reasons set forth in McKart apply here with special force. Congress stressed, in the amendments to the Economic Stabilization Act, that "the adjustments necessary to carry out this program require prompt judgments and actions." Premature interruption of the Price Commission's actions would plainly be at odds with that congressional purpose. Clearly, the Price Commission's decisions "are frequently of a discretionary nature or frequently require expertise." Finally, the autonomy of the Price Commission and promptness, regularity and consistency of its price control policies are essential to the administration of a nationwide program of price control.

These considerations prompted the Supreme Court to require exhaustion of administrative remedies before judicial relief could be obtained under the Emergency Price Control Act of 1942. In Yakus v. United States, 321 U.S. 414, 432, 64 S.Ct. 660, 671, 88 L.Ed. 834 (1944), the Supreme Court emphasized that:

> "The harm resulting from delayed or unequal price control is beyond repair. And one of the problems involved in the prevention of inflation by establishment of a nation-wide system of price control is the disorganization which would result if enforcement of price orders were delayed or sporadic or were unequal or conflicting in different parts of the country. These evils might well arise if regulations with respect to which there was full opportunity for administrative revision were to be made ineffective by injunction or stay of their enforcement in advance of such revision or of final determination of their validity.

Congress, in enacting the Emergency Price Control Act, was familiar with the consistent history of delay in utility rate cases. It had in mind the dangers to price control as a preven-

---

Comm'n, 29 N.Y.2d 164, 171, 324 N.Y.S. 2d 53, 56, 272 N.E.2d 554, 557 (1971); American Tel. & Tel. Co. Charges for Do-

mestic Telephone Service, 27 F.C.C.2d 151, 155 (1971).

tive of inflation if the validity and effectiveness of prescribed maximum prices were to be subject to the exigencies and delays of litigation originating in eighty-five district courts and continued by separate appeals through eleven separate courts of appeals to this Court, to say nothing of litigation conducted in state courts."

■ The Economic Stabilization Act, as amended, does give "exclusive and original" jurisdiction to federal district courts over controversies arising under the Act or regulations or orders issued thereunder.[10] Nevertheless, the Act specifically prohibits district courts from granting an "interlocutory or permanent injunction restraining the enforcement, operation, or execution" of the Act "or any regulation or order issued thereunder," [11] "unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence," [12] or "unless a final judgment determines that . . . such regulation was in excess of the agency's authority, was arbitrary or capricious, or was otherwise unlawful under the criteria set forth in" the Administrative Procedures Act.[13]

Clearly, these provisions of the Act stay the hand of the court from enjoining the Price Commission until it is presented with a concrete final order of the Price Commission supported by a definitive and solid factual basis.

■ None of the prerequisites to the exercise of our injunctive power have been shown by these plaintiffs. Patently,

it cannot be asserted or found that the Price Commission has exceeded its authority, made findings not supported by substantial evidence or issued an order arbitrarily or capriciously *until the Commission issues a final order*. No final order, valid or otherwise, has been issued by the Price Commission here. On the contrary, it still has the matter of defendant's rate increases under review. Surely, we are not to waste our labors on speculation as to what the Price Commission may or may not do respecting defendant's rate increases.

We think it clear, therefore, that initial submission to the Price Commission of all issues respecting defendant's rate increases is required, that these actions are premature, and that these motions should be denied for failure to exhaust available administrative remedies, unless there is merit to plaintiffs' contention that they have no administrative remedy.

■ The 1971 amendments to the Economic Stabilization Act require the Price Commission to

"establish procedures . . . available to any person for the purpose of seeking an interpretation, modification, or rescission of . . . [its] rules, regulations, and orders." Pub. L. No. 92–210, § 207(b).

The amendments also provide that:

"If [any] such person is aggrieved by the denial of a request for such action . . . he may request a review of such denial by the agency. The agency shall, in regulations prescribed by it, establish appropriate procedures,

---

10. Pub.L.No. 92–210, § 211(a).

11. *Id.* § 211(d) (1), (e) (1), (2). A district court, however, may enjoin temporarily or permanently the application of a particular regulation or order issued under the Act to a person who is a party to litigation before it. *Id.* § 211(d) (2). Obviously, this presupposes final agency action and not merely an interlocutory order, as is the case here. Moreover the movants would be required to make the customary showing of inadequacy of legal remedy, probability of success, and irreparable injury, Checker Motors Corp. v.

Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969), none of which can be shown at this time in view of the Price Commission's order of February 14, 1972 which maintains the status quo and protects plaintiffs from irreparable injury by its refund and rollback provisions until final agency action. See pp. 201 and 202 and Note 9, *supra*.

12. Pub.L.No. 92–210, § 211(d) (1), (e) (1), (b).

13. 5 U.S.C. § 706(2).

including hearings where deemed advisable, for considering such requests for action under this section." *Id.*

The Price Commission has promulgated the regulations mandated by Congress.[14] Thus, § 207(b) requires that "any person" be permitted to request modification or rescission of any order of the Price Commission. The regulations, thus, permit plaintiffs to contest any order of the Price Commission with respect to defendant's rate increases, and to request interpretation of any of its regulations, including the contentions made as to the interpretation and application of old or new § 300.16 of the Price Commission's regulations upon upon which plaintiffs mount this collateral attack.

In addition to their administrative remedies under § 207(b), plaintiffs may proceed under § 300.506(a) (d) of the Price Commission's regulations,[15] which is entitled "Submissions on price increase filings by person not a party to filing." That regulation provides that: "any person who shows that he has a direct interest in any application for a price increase" may submit "written data, information or views to the Price Commission with respect to that application." [16] This section plainly authorizes plaintiffs, upon showing a direct interest in defendant's application for rate increases, to submit their views to the Price Commission. This is so even though plaintiffs seek reexamination of a prior order. Thus, § 300.506(d) provides:

"A submission that is not received within the time prescribed in paragraph (c) of this section will be treated by the Commission as a request to reexamine the matters involved in the case to which the submission is addressed."

Finally, any doubt that the administrative door is open to plaintiffs is allayed by a letter dated February 15, 1972 from the General Counsel of the Price Commission, Hon. W. David Slawson, stating that:

"Any person may submit to this Commission written statements, requests for action, etc., with respect to:—

1. Any price increase application pending before the Price Commission;

2. Any order issued by the Price Commission;

3. Questions of interpretation of this Commission's regulations.

There have been submissions to this Commission, which the Commission is considering with respect to the increase in rates by New York Telephone Company."

This official interpretation of the applicable regulations by the Price Commission's counsel is, we think, of controlling significance.[17] Thus, all of the issues and request which these plaintiffs address to this court may and should be presented to the Price Commission.

We conclude, therefore, that plaintiffs have a full and adequate administrative remedy which they have failed to exhaust and are, therefore, not entitled to the equitable relief they seek here.

Ordinarily, application of the doctrine of primary jurisdiction would simply suspend these actions pending referral to the Price Commission for its views. Such a course here, we think, would be at odds with the congressional mandate that the price stabilization program requires "prompt judgments and actions by the executive branch of the Government." [18]

The complex issues of fact raised here do not call merely for incidental appraisal by the Price Commission as a basis for later judicial decision, but go to the very core of all the issues of fact raised by the actions and lie within the direct and

---

14. 6 C.F.R. §§ 305.1–.61, 37 Fed.Reg. 1008 (Jan. 31, 1972).

15. 36 Fed.Reg. 23980 (Dec. 16, 1971).

16. *Id.* § 300.506(a).

17. See Toney v. Grayson, *supra.*

18. Pub.L.No. 92–210, § 202.

primary jurisdiction of the Price Commission which can enlist the aid of expert consultants in the specialized field of public utility rates.[19]

The doctrine of primary jurisdiction is flexible, and we should shape it to fit the peculiar posture of these cases in order to reach a practical accommodation of court and agency.[20] We see no useful purpose in the circumstances of holding these actions, with their still mutable facts, in abeyance on the congested docket of this court while the proceeding before the Price Commission is being pursued. Sound judicial administration requires the development of a solid factual foundation which is not possible now with the uncertain outcome of the pending proceeding before the Price Commission. All of plaintiffs' present complaints may prove to be academic.[21] Once the facts become definitive, similar actions are easily instituted later, if appropriate. In such circumstances, businesslike procedure counsels that the complaints should now be dismissed.[22]

Accordingly, plaintiffs' motions for preliminary injunctions are denied, the temporary restraining orders issued on February 9, 1972 are vacated, and the actions are dismissed. There being no just reason for delay, the Clerk of the court is directed to enter judgments dismissing the actions.

The foregoing opinion constitutes this court's findings of fact and conclusions of law, in accordance with Rule 52, Fed.R. Civ.P.

So ordered.

## APPENDIX A

*Section 300.16 of the Regulations of the Price Commission, 6 C.F.R. § 300.16, As in Effect December 16, 1971—*

*January 16, 1972 36 Fed.Reg. 23977 (Dec. 16, 1971)*

§ 300.16 *Regulated public utilities*

(a) *In general.*

A person which is a regulated public utility (as defined in section 7701(a) (33) of the Internal Revenue Code of 1954 (26 U.S.C. sec. 7701(a) (33))), may charge a price, rate, or tariff in excess of the base price if that increase has been approved by a regulatory agency or other appropriate legal authority. A public utility which had revenues of $100 million or more during its most recent fiscal year shall inform the Price Commission of all requests for rate increases and immediately notify the Commission of all requests for rate in-order granting an increase and of any other authorized increase. A public utility which had revenues between $50 and $100 million during its most recent fiscal year shall immediately notify the Commission in writing of any agency order granting an increase and of any other authorized increase. In order to insure that the goals of the economic stabilization program are attained, the Price Commission reserves the right to review and limit the amount of any such requested increase, ordered increase or other authorized increase.

(b) *Special Rule.*

In the case of rate increases which were approved by a regulatory agency or other appropriate legal authority before November 14, 1971, but which were not permitted to take effect due to Executive Order 11615, the rate increase may take effect with respect to transactions occurring after November 13, 1971. However, before the increases may take effect, the regulatory agency or other appropriate legal authority shall review the increase with regard to their consistency with the purposes of the Economic

---

19. *Id.* § 213.

20. See, generally, 3 Davis, Administrative Law (1958), 1–55; United States v. Manufacturers Hanover Trust Co., 240 F.Supp. 867, 882 n. 13 (S.D.N.Y.1965).

21. United States Nav. Co. v. Cunard S. S. Co., 284 U.S. 474, 488, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

22. Far East Conference v. United States, 342 U.S. 570, 576–577, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

Stabilization Act of 1970, as amended, and certify that the increases or adjusted increases are consistent with those purposes. The certification, together with a report of the increased rate schedule thus put into effect, showing the amount of the increased rates, shall immediately be supplied to the Commission by any regulated person which receives such a certification and which had revenues of $50 million or more during its most recent fiscal year.

## APPENDIX B

*Section 300.16 of the Regulations of the Price Commission 6 C.F.R. § 300.16,*

*Effective January 17, 1972 37 Fed.Reg. 652 (Jan. 14, 1972)*

§ 300.16 *Public utilities*

(a) *Definitions.*

The following definitions apply in this section:

"Public utility" means a person that furnishes utility services to the public or a recognized segment of the public including—

(1) A person that furnishes utility services subject to the jurisdiction of a regulatory agency, including those utility service operations of the person that are not subject to the jurisdiction of a regulatory agency;

(2) A government agency or instrumentality that furnishes utility services that would be subject to the jurisdiction of a regulatory agency if furnished by a person other than a government agency or instrumentality; and

(3) A cooperative that furnishes utility services.

"Regulatory agency" means any commission, board, or other legal body that has jurisdiction to order increases or reductions, or both, of the prices charged by a public utility.

"Utility service" means any commodity or service affected with a public interest, including gas, electricity, telephone, telegraph, public transportation by vehicle or pipeline, water, and sewage disposal, but not including water or sewage disposal services furnished by a government agency or instrumentality.

(b) *Scope of reporting requirements—*

(1) *Regulated public utilities.*

Before April 18, 1972, the reporting requirements of this section apply to each price increase by a regulated public utility that is a prenotification firm which would increase that public utility's aggregate annual revenues by more than 1 percent. However, if a regulatory agency furnishes to the Price Commission—

(i) A proposal describing the types of price increases subject to its jurisdiction which it believes should not be reported under this section because their inflationary impact would not be significant; and

(ii) A statement of its reasons with respect to each type: and the Price Commission approves the proposal as submitted or as modified by it, then thereafter the reporting requirements of this section will apply only to price increases which are not exempted under the proposal. In any case in which a proposal or modification thereof has not been approved by the Price Commission, each price increase or proposed price increase by a public utility that is a prenotification firm which occurs after April 18, 1972, shall be reported to the Price Commission as provided in paragraphs (c) through (1) of this section.

(2) *Unregulated public utilities.*

The reporting requirements of this section apply to each price increase by an unregulated public utility that is a prenotification firm which, when cumulated with previous price increases which the public utility has made (including those for which it has applications pending) during its current fiscal year, would increase its aggregate annual revenues by more than 2½ percent.

(c) *Price increases to which reporting and certification requirements do not apply.*

The reporting and certification requirements of this section do not apply to any price increase resulting from the

pass-through of specific allowable costs, including taxes (except income taxes) and fuel costs, but not including labor costs, if the increase is not objected to by the appropriate regulatory agency and is authorized by statute, regulation, or order of the appropriate regulatory agency, or by an approved tariff provision.

(d) *General.*

A public utility may charge a price in excess of a final price (a price which is not subject to accounting and refund) in effect on January 16, 1972, only if, within the appropriate period specified in this section for review by the Price Commission, the Commission does not make a negative finding on any of the following:

· (1) The increase is cost-based and does not, unless specifically provided otherwise by the Price Commission, reflect future inflationary expectations;

(2) The increase is the minimum required to assure continued, adequate, and safe service or to provide for necessary expansion to meet future requirements;

(3) The increase will achieve the minimum rate of return or profit margin needed to attract capital at reasonable costs and not to impair the credit of the public utility;

(4) The public utility has obtained a certificate in accordance with paragraph (e) of this section, or, in a case to which paragraph (f) of this section applies, it has self-certified as required by that paragraph; and

(5) In the opinion of the Price Commission, the increase is consistent with the Commission's overall goal of holding average price increases across the economy to a rate of not more than 2½ percent a year.

(e) *Regulatory agency certification.*

With respect to each price increase it approves, each regulatory agency shall certify in the order granting the increase or in a separate document the following:

(1) The former price, the new price, and the percentage increase;

(2) The dollar amount of increased revenue which the increase is expected to provide;

(3) The amount by which the increase will increase the utility's profits as a percentage of its total sales;

(4) The amount by which the increase will increase the utility's overall rate of return on capital;

(5) That sufficient evidence was taken in the course of its proceedings to determine whether the criteria set forth in paragraph (d) (1) through (4) of this section are or are not met by the price increase; and

(6) That the price increase does or does not meet those criteria or meets them only to a particular extent, with a statement of reasons why the price increase does or does not meet the criteria or meets them only to a particular extent.

(f) *Self-certification.*

Whenever a public utility cannot obtain a certification in accordance with paragraph (e) of this section because the public utility is not subject to the jurisdiction of a regulatory agency or for any other reason not in conflict with this section, the public utility may put the increase into effect only after its chief executive officer, under penalty of perjury, certifies to the following:

(1) Why certification under paragraph (e) of this section was not obtained.

(2) A statement, with full explanation, that paragraph (d) (1) through (3) of this section has been complied with.

Each public utility that makes a certification under this paragraph must keep the certification available for inspection upon the reasonable request of any person.

(g) *Rate bureaus and conferences.*

Whenever a price increase is proposed by a rate-making association (rate-bureau, conference, or similar organization) authorized by law to act on behalf of its members, the regulatory agency or association may base its certification

that the proposed increase conforms to paragraph (d) (1) through (3) of this section upon cost or other data compiled on the basis of association or industry averages. However, in such a case, the Price Commission may also require any public utility member of the association to submit any information that the Price Commission considers relevant.

(h) *Regulated public utilities—report a request for price increase.*

Within 5 days after filing a request for a price increase with a regulatory agency, each regulated public utility to which the reply shall report that request to the Price Commission, on a form prescribed by the Commission.

(i) *Regulated public utilities—interim report on increases put into effect subject to accounting and refund.*

(1) At least 15 days before the effective date of a price increase allowed to go into effect by a regulatory agency subject to accounting and refund or by operation of law, each regulated public utility to which the reporting requirements of this section apply shall make an interim report on the increase to the Price Commission, on a form prescribed by the Commission. The report shall include a certification as required by paragraph (f) of this section. The Commission may take any action provided in paragraph (1) of this section until the expiration of 10 days after receiving the report required by paragraph (j) of this section.

(2) However, a public utility is not required to comply with subparagraph (1) of this paragraph if the regulatory agency has furnished a certification in the form required by paragraph (e) of this section, except for subparagraph (5) thereof. The regulatory agency shall furnish such a certification unless it informs the Price Commission that, with respect to the particular price increase, or a class of price increases that includes the particular price increase, the furnishing of such a certification is not feasible because the agency does not have sufficient information, or for other

reasons satisfactory to the Price Commission.

(3) Notwithstanding any other provision of this section, no price of the kind covered by this paragraph (i) may be increased before the end of the maximum suspension period permitted by law unless the regulatory agency has certified to the Price Commission that there is good cause for an earlier effective date, together with its reasons therefor, and the Price Commission has approved that certification.

(j) *Regulated public utilities—report of approved increases.*

Within 5 days after receiving final regulatory agency approval of a price increase, each public utility to which the reporting requirements of this section apply shall report the approved increase to the Price Commission on a form prescribed by the Commission, with a copy of the certification required by paragraph (e) of this section and a copy of the agency order approving the increase. During the 10-day period following its receipt of the report the Price Commission may take any action provided by paragraph (1) of this section.

(k) *Public utilities (regulated or unregulated)—reports of other increases.*

Each public utility to which the reporting requirements of this section apply shall, whenever it proposes to place a price increase in effect which is not subject to paragraphs (h), (i), or (j) of this section, report that increase to the Price Commission, on a form prescribed by the Commission, at least 30 days before the effective date of the increase, with a copy of the appropriate certificate required by this section. At any time within 10 days after receiving the report, the Price Commission may take any action provided in paragraph (1) of this section, or it may take no action, in which case the increase may go into or remain in effect at the end of that 10-day period.

(l) *Price Commission actions.*

With respect to any price increase by any public utility and within any time

limits specified in this section, the Price Commission may—

(1) Require the public utility to furnish additional information regarding the increase;

(2) Delay the effective date of the increase pending further Commission action, but not longer than 10 days after the receipt of any information required under subparagraph (1) of this paragraph;

(3) Suspend all or part of the increase, pending further action by the Price Commission or by the regulatory agency; or

(4) Limit, refuse, rescind, reduce, or modify the increase.

(m) *Requirements for public utilities which are not required to report under this section.*

In the case of a price increase proposed or put into effect by a public utility other than a firm required to report under this section, the Price Commission shall exercise its rights under this paragraph within 10 days after the public utility has received final approval from the regulatory agency for the price increase or within 10 days after the price increase has been placed in effect, whichever is earlier. However, if within the applicable 10-day period the Price Commission notifies the public utility that it needs additional information concerning the increase, these periods are extended until 10 days after the additional information is received.

(n) *State and locally owned public utilities—full recovery of costs.*

Nothing in this section may be construed to prevent a public utility owned by a State or local government, or an agency or instrumentality thereof, from recovering the full costs of furnishing the utility service concerned.

(o) *Proposals submitted to the Price Commission.*

Any regulatory agency may submit to the Price Commission written proposals for changes, deletions, and additions to this section. The submission shall contain the following:

(1) A statement of the problems experienced by it under this section.

(2) Its reasons why this section needs to be changed.

(3) A draft of alternate regulations designed to relieve the problem but to preserve the intended effect of this section.