Frank J. CRIMMINS, Plaintiff,

v.

AMERICAN STOCK EXCHANGE, INC., Defendant.

No. 72 Civ. 290.

United States District Court,
S. D. New York.

July 26, 1972.

**1258**

Spear & Hill, New York City, for plaintiff; Donald Stuart Bab and Thomas W. Hill, Jr., New York City, of counsel.

Forsythe, McGovern, Pearson & Nash, New York City, for defendant; Burton L. Knapp, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff moves for a preliminary injunction, pursuant to Rule 65, Fed.R. Civ.P., enjoining defendant American Stock Exchange ("Exchange") from proceeding with a disciplinary hearing on charges that he may have violated certain rules and regulations of the Exchange and the securities laws.

Plaintiff is an officer of Walston & Co., which is a broker-dealer and member of the Exchange. He was charged, pursuant to Rule 345 of the Exchange's board of governors which allows the board to discipline employees of member organizations, with engaging in conduct inconsistent with just and equitable principles of trade and detrimental to the interest and welfare of the Exchange by churning market activity in the stock of Four Seasons Nursing Centers, Inc., while he was in a position to receive inside information, by making a material misstatement about his personal indebtedness to the officers of Four Seasons, by engaging in transactions off the Exchange without the required permission of the Exchange, and by arranging for the extension of credit to himself for the purchase of stock from the officers of Four Seasons on terms more favorable than those permitted under Federal Reserve regulations.

Upon plaintiff's denial of the charges, a hearing was scheduled to be held before the board, and plaintiff requested the right to be represented by counsel at that hearing. The Exchange denied the request, pursuant to Section 1(d) of Article 5 of its constitution, which provides: "No person, firm or corporation shall have the right to be represented by professional counsel in any investigation or hearing before the board of governors . . . ."

Plaintiff then instituted the present action to permanently enjoin the Exchange from conducting the hearing until it permitted him to be represented by counsel on the ground that denial of the right to be represented by counsel (1) violates his right to due process under the Fifth Amendment, (2) violates Section 6 of the Securities Exchange Act of 1934,[1] (3) violates Sections 1 and 2 of the Sherman Anti-Trust Act,[2] and (4) is a breach of plaintiff's contract with the Exchange.

A preliminary injunction is an extraordinary remedy and should be granted only where the applicant shows a strong likelihood of ultimate success on the merits and irreparable injury unless such relief is granted, or where the applicant makes a limited showing of probable success but raises substantial issues requiring further inquiry and shows that the harm to him outweighs

---

1. 15 U.S.C. § 78f.

2. 15 U.S.C. §§ 1 and 2.

the injury to others if the relief is denied.[3]

■ We consider first the likelihood of plaintiff's success on the merits of his four claims. Plaintiff's first claim is that the denial of his right to be represented by counsel at the hearing violates his right to due process.

Plaintiff contends that the Fifth Amendment right to due process inheres in the Exchange's disciplinary procedures since the Exchange is acting as an arm of the federal government when it exercises the power of self-regulation granted it by the 1934 Securities Exchange Act. Plaintiff further contends that in the present case, the right to due process includes the right to be represented by counsel at the hearing.

The Exchange, on the other hand, maintains that it is a private organization and it does not act as an arm of the government and that, therefore, its disciplinary proceedings are not subject to the due process requirements of the Fifth Amendment. The Exchange further maintains that even if it could be construed as an arm of the government, the due process which it must accord plaintiff in this situation does not require a full trial-type hearing with representation by counsel.

■ We think that the day is long gone when a national stock exchange can be considered a private club when it conducts disciplinary proceedings against its members or their employees. When an exchange conducts such proceedings under the self-regulatory power conferred upon it by the 1934 Act, it is engaged in governmental action, federal in character, and the Act imposed upon it the requirement that it comply with fundamental standards of fair play.[4] That requirement was reiterated in Intercontinental Indus., Inc. v. American Stock Exch., 452 F.2d 935 (5th Cir., Dec. 20, 1971), in which it was held that the intimate involvement of the American Stock Exchange with the S.E.C. brought it within the purview of the Fifth Amendment controls over governmental due process.

■ However, the fact that disciplinary proceedings of the Exchange come within the purview of Fifth Amendment due process does not, of itself, mean that plaintiff is constitutionally entitled to counsel at the hearing before the board of governors. The Fifth Amendment does not require a full trial-type hearing in every case of government impairment of a private interest.[5]

■ The requirements of due process vary from case to case. The procedures due one person in one situation are not automatically required for another person in a different situation.[6] At a minimum, due process generally includes notice and a hearing,[7] although even these basics are not always required.[8] But, surely, the presence of counsel at a hearing such as the present one is not an inherent requirement of due process. Counsel has been held not to be required in other instances where purely private interests were involved, such as at draft board hearings,[9] at hearings involving expulsion from a service academy[10] or expulsion from

3. Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970) ; Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

4. Silver v. New York Stock Exch., 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

5. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

6. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) ; Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967).

7. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

8. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, *supra.*

9. United States v. Sturgis, 342 F.2d 328 (3d Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965).

10. Wasson v. Trowbridge, *supra.*

school,[11] or even at investigatory hearings that could lead to criminal prosecution.[12]

As Mr. Justice Frankfurter stated:

"The utmost devotion to one's profession and the fullest recognition of the great role of lawyers in the evolution of a free society cannot lead one to erect as a constitutional principle that no administrative inquiry can be had *in camera* unless a lawyer be allowed to attend." [13]

■ The determination of whether a specific procedural requirement is to be met in a given situation is to be made on a case-by-case basis by balancing the interests involved.[14]

In the present case, we must balance the interests of plaintiff that might be affected by his lack of counsel at the hearing against the interest of the Exchange in abiding by its "no counsel" rule. Plaintiff, if he is found guilty, faces a maximum fine of $25,000 and possible expulsion from the Exchange. There is no doubt that these results, though speculative, might affect important interests of plaintiff, but we think that those interests are outweighed by the public interest involved in allowing the Exchange to control its disciplinary procedures, as long as they are fair, with the maximum degree of flexibility so that it can efficiently root out practices by its members which it considers violative of their duty to the public and the Exchange.

The securities business is a highly sensitive one, and since unethical business practices can seriously affect it and the investing public if allowed to continue for even a short time, the Exchange must be able to move promptly against those practices. The rigidity and contentiousness of counsel might defeat that goal. The purpose of a hearing before the Board of Governors is to allow the businessmen who run the Exchange to discover any possible violations of business rules and ethics without being burdened by the full panoply of judicial procedure.

We do not infer that the procedures of the Exchange need not be fair, but whether the presence of counsel at this hearing is a necessary ingredient of fairness is to be determined from a consideration of all of the other aspects of those procedures.[15]

The Exchange's disciplinary procedures, as they now stand, are thoroughly fair. In the present case, a thorough investigation was made into the background of the charges, during which plaintiff was examined in the presence of his counsel and after which an extensive report was published. Plaintiff was given an opportunity to serve a written response, prepared with the aid of counsel, to that report, and no charges were asserted against him until the Exchange determined that his response did not sufficiently explain or justify his questioned business activities. When the charges were issued, they were made in writing and were specifically detailed. Plaintiff was given adequate time to file a written answer to the charges. Plaintiff will be given a full hearing before the board with an opportunity to examine and cross-examine all witnesses and also to present such testimony, defense or explanation as he may deem proper. He is permitted to bring with him to the hearing a member of the Exchange.

Plaintiff maintains that the complex factual and legal nature of the charges made against him necessitate his having counsel to represent him during the hearing. We do not agree. The charges

11. Madera v. Board of Education of City of N. Y., 386 F.2d 778 (2d Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968).

12. In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957).

13. In re Groban, *supra*, 352 U.S. 336, 77 S.Ct. 515.

14. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, *supra*.

15. Madera v. Board of Education of City of N. Y., *supra*.

involve alleged violations of Exchange rules, procedures and standards of ethical business behavior with which plaintiff was required to be familiar as a condition for approval of his position at Walston and with which he pledged himself to comply. The hearing, which is non-criminal in nature and non-adversarial, will determine basically whether his activities were in direct conflict with the duty of fair dealing which he owed to the customers of Walston and the investing public. Further, plaintiff is a mature, educated adult well able to articulate for himself. He is highly sophisticated in the securities business, having worked in it for more than fifteen years and having owned and traded substantial amounts of stock for his personal account. He has, therefore, both the knowledge and ability to explain and elicit from witnesses the facts pertaining to his case.

In view of all these facts, we think that the Exchange's existing procedures are adequate to insure plaintiff of his Fifth Amendment right to due process, and, consequently, we do not think that plaintiff has made a showing of likelihood of success on the merits of this claim.

Plaintiff establishes even less likelihood of success on his three other claims. His second claim is that the denial of counsel violates Section 6 of the Securities Exchange Act of 1934, which requires as a condition of registration for an exchange that "the rules of the exchange include provision for the expulsion, suspension, or disciplining of a member" and that those rules be "just and adequate to insure fair dealing and to protect investors." Plaintiff contends that the Exchange rule prohibiting him from being represented by counsel does not insure the fair dealing required by the Act. We cannot agree.

■ In light of our conclusion that the Exchange's disciplinary procedures, as they stand, do not violate the Fifth Amendment due process requirements, we conclude that they also do not violate the 1934 Act's requirement of fundamental fairness.

Apparently, the S.E.C. is of the same opinion. It approved those procedures at its inception in 1934 when it approved the Exchange's constitution, and, although since that time it has had the power to modify or alter the rules of the Exchange, it has never taken, nor proposed, any action to change the rule in question here.

Consequently, we conclude that plaintiff will not be successful on his claim under the Securities Exchange Act of 1934.

■ Plaintiff's third claim is that the denial of counsel violates Sections 1 and 2 of the Sherman Anti-Trust Act. Plaintiff relies on Silver v. New York Stock Exch., 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), which holds that those self-regulatory actions of a stock exchange, which are anticompetitive and collective, are not exempt from the antitrust laws where they conflict with those laws, unless they are necessary to carry out the policy of the S.E.C. and are justified by the presence of fair procedure.

On the basis of Silver, plaintiff contends that the denial of counsel makes the Exchange's procedures unfair and, therefore, its collective action in the present case is unjustified and in direct violation of the antitrust laws.

We do not find it necessary to determine whether the Exchange's actions here are collective and anticompetitive since we find that they are necessary to carry out the policy of the S.E.C. in allowing the Exchange to police itself and they are justified by the presence of fair procedure. The standards of fairness enumerated in Silver include notice, a hearing, and an opportunity to answer charges. They do not include the right to counsel at the hearing, and we conclude that that right is not essential here. Consequently, plaintiff has not established a likelihood of success on his antitrust claim.

■ Plaintiff's fourth claim is that the denial of counsel breaches his contract with the Exchange. He claims that as a condition for employment with Walston & Co. he was required by the Exchange to sign an agreement binding them both to its constitution and rules. He further claims that Section 1(b) of Article 5 of the Exchange's constitution guarantees him the right to present any defense he deems proper at a disciplinary hearing and that, in the present case, because of the complex nature of the charges against him, he cannot present a proper defense without assistance of counsel and that, therefore, the Exchange's "no counsel" rule conflicts with Section 1(b) and upholding the rule would breach his rights under that section.

We reject plaintiff's contentions. Section 1(b) gives an accused the right to present any substantive defense he deems proper and not the right to present his defense through whatever medium he chooses or through the procedures he desires. Plaintiff signed the agreement with full knowledge that both clauses were in it and that the right to present any defense did not include the right to be represented by counsel at a hearing. Plaintiff cannot now seek to bind the Exchange to one clause of its constitution so that he may escape the bonds of another.

We find, therefore, that there is no conflict between these two sections on their face and, further, that the present factual situation does not create one. We have already rejected plaintiff's contention that the issues here are so complex that he cannot effectively be heard on them without the assistance of counsel. Consequently, we find that plaintiff has not shown the likelihood of success on his breach of contract claim.

We turn next to a consideration of plaintiff's claim that he will suffer immediate irreparable harm if the extraordinary relief which he seeks is not granted.

Plaintiff bases this claim on his contention that as a result of his lack of counsel at this hearing he might be found guilty and he could be fined, suspended, or expelled from the Exchange, his business reputation would be damaged, and he might be faced with criminal prosecution. We find these contentions far too remote and speculative to be considered a clear showing of immediate irreparable harm.

■ Until the hearing before the board is concluded, it is sheer speculation for plaintiff to predict the outcome of it and to suggest reasons for that outcome. What plaintiff urges as immediate injury are his speculations that he might be found guilty because he was not represented by counsel and that, if so, he might suffer economic loss or criminal prosecution. We think that this is too tenuous a string of possibilities to serve as a basis for a preliminary injunction. Injunctions are not granted against prospective violations and prospective injuries which have not yet occurred and which, indeed, may never occur.[16]

■ Moreover, putting aside the speculative nature of the contentions, we think it clear that if plaintiff is wrongfully expelled, suspended, fined, or injured in his reputation, he has a full and adequate remedy in an action for damages at law.[17] Equity acts only when legal remedies are clearly inadequate.[18] Insofar as plaintiff predicates his claim of irreparable injury upon exposure to possible criminal prosecution, he has his remedy under the Fifth Amendment.[19]

16. Chris-Craft Indus., Inc. v. Bangor Punta Corp., 426 F.2d 569 (2d Cir. 1970) ; Grassroots Action, Inc. v. New York Telephone Co., 339 F.Supp. 198 (S.D.N.Y.1972).

17. Jacobsen v. American Stock Exch. [1970–1971 Transfer Binder] CCH Fed.

Sec.L.Rep. ¶ 93,131 (S.D.N.Y., July 22, 1971).

18. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

19. In re Groban, *supra*.

We conclude, therefore, that plaintiff has not made a clear showing of immediate irreparable harm.

Accordingly, the motion for a preliminary injunction is denied.

The foregoing constitutes this court's findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

So ordered.