Per Guriam.

The New York Telephone Company (Company) filed for a rate increase in the amount of $175,000,000 annually on March 20, 1969. The Public Service Commission (Commission) suspended this increase for 10 months. On February 24, 1970 it fixed an interim increase of $136,000,000. In an order of July 1,1970 the Commission reduced the increase to $105,000,000. It fixed final rates to increase revenues $120,797,000 annually.
The Commission ordered refunds. On July 1, 1971 the Commission issued an opinion and order granting another temporary rate increase in the amount of $190,000,000. Accordingly, the issue of prospective interim relief in this proceeding probably has become moot. The remaining issue is whether the Company should be compelled to make refunds of part of the interim rates for the period March, 1970-June 30, 1971.
In this case the year 1968 was selected as a test period. Based on the test year a return of 8.89% before attrition was anticipated if the entire increase were allowed. The Commission determined that a 7.875% rate of return would be reasonable. According to the Company’s figures, the actual 1969 and first *169 three months’ experience of 1970 under the interim increase yielded a significantly lower return than that deemed reasonable by the Commission and, indeed, lower than that which the Company was earning prior to the application. The Company therefore filed petitions to reopen the hearings before the final order was made and again after it was made. It offered the actual experience for the Commission’s consideration. Both petitions were denied by a vote of three to two.
The majority of the Commission does not deny confiscation, but was of the opinion that the Company could by way of a new rate proceeding secure whatever relief it believes it can justify under the changed conditions. The dissenting Commissioners pointed out that the evidence was clear that there was a present confiscation of the Company property and it was no answer to invite the Company to file new rates which would again be subject to suspension, during which period the Company would be accorded the privilege of continuing its operations under the alleged confiscatory rates.
A suit in equity and an article 78 proceeding to review the Commission’s determination were commenced simultaneously. The Supreme Court decided in favor of the Company and the Appellate Division reversed. The Company argues that the refusal to reopen the hearing was arbitrary and that the limitation to the test year figures result in an unconstitutional confiscation of its property.
Inasmuch as we find that the order of refunds based on only out-of-date evidence and the refusal to reopen the hearing were arbitrary (CPLR 7803, subd. 3) and that, consequently, the proceeding must be remanded to the Commission, we do not pass on any of the substantive questions presented.
The law is well-settled that the Commission may not rely on a reckoning when actual experience is available and establishes that the predictions have been substantially incorrect. (West Ohio Gas Co. v. Public Utilities Comm. [No. 2], 294 U. S. 79, 82.) In Lindheimer v. Illinois Bell Tel. Co. (292 U. S. 151, 164) the court said, ‘ ‘ Elaborate calculations which are at war with realities are of no avail ’ ’. This principle applies not only in cases where the rate proceeding fixes the rate but especially where the Commission directs refunds. (West Ohio Gas Co. v. Public Utilities Comm. [No. 2], sufra). There the court said *170 (p. 82): “ To prefer the forecast to the survey is an arbitrary judgment.” In a recent case, Boston Gas Co. v. Department of Public Utilities (269 N. E. 2d 248 [Mass., 1971]) the court held that the Commission must consider evidence of attrition which has actually occurred since the test period. The Massachusetts case rationale is not new. Commissions are bound to take into account drastic changes in economic circumstances. (See Atchison, T. & S. F. Ry. Co. v. United States, 284 U. S. 248.) This court made this clear in People ex rel. Consolidated Water Co. v. Maltbie (275 N. Y. 357, 367-368, app. dsmd. 303 U. S. 158) in this statement: “If the opinion or prophecy of the expert witnesses given in May, 1932, was proven wrong by events occurring during the interval, the Commission could, of course, not base any finding upon the discredited opinion. If the Commission was bound to take judicial notice of such events, its decision must be based upon them rather than upon the discredited prophecy. If proof of such events was necessary, it might be offered by the party who challenged the opinion. In any case the party who attacks the correctness of the decision must show that intervening events have destroyed the force of opinion testimony upon which the decision is based.”
Where there is a great disparity between the predicted rate of return found necessary by the Commission and the return actually earned, a suitable adjustment should be made to reflect the attrition trend or the erosion that has taken place. In Matter of Bronx Gas & Elec. Co. v. Maltbie (27 N. Y. 364, 375) the court said: “ ‘ Experience ’—how much better this is than expert testimony, whether dealing in history or prophecy.”
Turning to the suggestion made by the Commission that the Company is restricted to the initiation of a new rate proceeding, it is only necessary to point to the comment made by Justice Cardozo in West Ohio Gas Co. v. Public Utilities Comm. (No. 2) (supra, p. 83): “ Present confiscation is not atoned for by merely holding out the hope of a better life to come ”.
The limited reopening of the Commission hearing for the purpose of receiving and testing the facts regarding the three-month 1970 results would only require minimal investigation. The speculation of the Appellate Division that the limited period might lead to possible distortion has been disproven by the full *171 1970 results, and the results of the first five months of 1971. These results are representative of the immediate past and will be of the future.
There is no danger of irreparable harm to the subscribers as the excess of the interim rates over that authorized by the Commission after remand would be refunded with 7% interest. Thus, the Company’s customers would suffer no injury if the stay is granted and if the Commission should ultimately prevail.
The Company’s offer to show facts which would establish and conclusively prove that circumstances had drastically changed since the 1968 test period must be accepted, as to “ shut one’s eyes to them altogether, to exclude them from the reckoning is * * * arbitrary action ”. (West Ohio Gas Co. v. Public Utilities Comm. [No. 2], supra, pp. 81-82.)
The 7.875% rate of return purportedly granted by the Commission after a nine-month delay from the date the hearings were closed is based on a stale experience and predictions established to be grossly incorrect, as the realities of climbing inflation and of the necessary enormous plant expansion with concurrent increase in expenses for a large number of additional new personnel who require training, has driven up costs far beyond the 1968 experience. The inquiry is to ascertain the real return, not a so-called return.
An attempt to give prediction first place and experience the second is barred whether the attempt is made by the utility or the officers of government prescribing rates. In either case, the subscribers, and, in this State, the City of New York as well as the Company, must be given a full hearing. Under the unusual circumstances of this known experience in this case, to compel the Company to accept the substantially inaccurate determination of the Commission is to deny it due process.
Accordingly the order of the Appellate Division should be modified by reversing so much thereof as confirmed the determination of the Commission and dismissed the article 78 proceeding and the matter should be remanded to the Commission to reopen the hearing, and the payment of refunds is stayed pending the determination of the Commission.