**NEW ENGLAND TELEPHONE & TELE-
GRAPH COMPANY**

v.

**PUBLIC UTILITIES COMMISSION et al.**

Supreme Judicial Court of Maine.

Dec. 10, 1974.

Pierce, Atwood, Scribner, Allen & Mc-Kusick by Vincent L. McKusick, Everett P. Ingalls, III, Portland, C. Duane Aldrich, Robert D. Bruce, New England Telephone and Telegraph Co., Boston, Mass., for plaintiff.

Horace S. Libby, Public Utilities Commission, Augusta, Howard T. Reben, Portland, Herman Cohen, pro se, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On September 13, 1973 plaintiff, New England Telephone & Telegraph Company (hereinafter "New England"), filed with the defendant, Public Utilities Commission, a general revision of its schedule of Maine Intrastate Telephone Rates. The revised rates were intended to produce for New England a 9% increase in its revenues. On June 13, 1974 the Commission entered a rate order authorizing rates calculated to provide New England a 5.6% increase in revenues.

By the instant proceeding New England has invoked the jurisdiction of this Court, as New England conceives it to be conferred by 35 M.R.S.A. § 305 (hereinafter "Section 305"),[1] and has moved that par-

---

1. As here pertinent, 35 M.R.S.A. § 305 provides:

"§ 305. Additional court review

"Notwithstanding sections 303 and 304, in all cases in which the justness or reasonableness of a rate, toll or charge by any public utility or the constitutionality of any ruling or order of the commission is in issue, the law court shall have jurisdiction upon a complaint to review, modify, amend or annul any ruling or order of the commission, but only to the extent of the unlawfulness of such ruling or order. If in such complaint it is alleged that confiscation of property or other violation of constitutional right results from such ruling or order, the law court shall exercise its own independent judgment as to both law and facts. . . .

"No evidence beyond that contained in the record of the proceedings had before the

ticular data not previously introduced into the evidentiary record upon which the Commission rested its June 13, 1974 order now be given cognizance to require the Commission to change its order and allow New England the 9% increase in revenues originally sought. The additional material consists of investment, revenue and expense information shown by the Company's operations during the period July 1, 1973 through March 31, 1974.

New England contends that the newly proffered information establishes that while it is in effect, the June 13, 1974 rate order "results" in a "confiscation" of New England's property. The additional evidence thus raises, says New England, an issue concerning which Section 305 requires this Court (1) to

> " . . . exercise its own independent judgment as to both law and facts . . ."

and (2)

> " . . . as it deems necessary for the determination of such . . . [issue] . . ."

to order " . . . additional evidence to be taken . . .."

New England's motion proposes that this Court either: (1) remand the case to the Commission for the Commission to take the additional evidence, the Commission to have authority "after hearing such evidence" to

> "modify its findings as to facts and its original decision . . . by reason of the additional evidence so taken"

(according to the express provisions of Section 305); or (2) "short-cut" Section 305's express provisions by accepting the additional evidence as tendered .by affidavit and remand the case to the Commission for verification of the data with directions that upon verification the Commission order into effect the revised rates of New England's original rate filing.

The responsive pleading of the Commission (in the form of a motion) asks this Court to dismiss New England's Section 305 complaint because this Court lacks subject-matter jurisdiction or, in any event, to deny the motion for additional evidence.

While this Section 305 proceeding has been pending, New England made a new rate filing with the Commission on October 8, 1974 and on October 25, 1974 asked that it be given interim effectiveness (under the authority of Bangor Hydro-Electric Company Re: Petition for Interim Rate Relief, 93 P.U.R. 3d 96 (M.P.U.C. 1972)). Claiming that the instant proceeding has thereby been rendered moot, the Commission has sought dismissal on this ground.[2]

commission shall be introduced before the court, except that in cases where issues of confiscation or of constitutional right are involved the court may order such additional evidence as it deems necessary for the determination of such issues to be taken before the commission upon such terms and conditions as to the court may seem proper. Whenever the court shall order additional evidence to be taken, the commission shall promptly hear and report such evidence to the court, so that the proof may be brought as nearly as reasonably possible down to the date of its report thereof to the court. The commission may, after hearing such evidence, modify its findings as to facts and its original decision or orders by reason of the additional evidence so taken, and it shall file with the court such amended decision or orders and such modified or new findings. If the commission shall modify or amend its original decision or orders, the appealing party or any other party aggrieved by such modified or amended decision or order may file with the court, within such time as the court may allow, a specification of errors claimed to have been made by the commission in such modified decision or orders, which specification of errors shall thereupon be considered by the court in addition to the errors asserted in the original complaint on appeal."

2. One Herman Cohen, who had been permitted to intervene in the proceedings before the Commission, filed a motion in this Section 305 proceeding asking to be permitted to file a cross-claim against New England. He has withdrawn this motion and, hence, we have no need to consider it.

For reasons hereinafter explained, we deny both of the Commission's motions to dismiss the proceeding. We also deny New England's motion for additional evidence.

## 1. Additional Factual Background

After New England had filed its general revision of intrastate telephone rates, by order of the Commission issued under Rule 4A of the Commission's Rules of Practice and Procedure, New England, on October 10, 1973, filed its complete case in the form of prepared testimony and exhibits. Following standard procedures, New England utilized as the basis of its evidentiary case a "test year" constituted by the period July 1, 1972 through June 30, 1973.

The Commission held hearings on various days, five in number, and by December 18, 1973 had completed the evidentiary record on which it was to act—except that on January 23, 1974 it held a special hearing to take the evidence of intervenor Herman Cohen. Thereupon, the total evidentiary record was closed (subject only to the filing of two "late-filed" exhibits), and the Commission took the case under advisement.

Pending all of the hearings and during the period between the close of the evidentiary record and the entry of the Commission's order on June 13, 1974, the Commis-sion, pursuant to authority conferred upon it by 35 M.R.S.A. § 69,[3] suspended the effectiveness of the revised rate schedule filed by New England on September 13, 1973.

The Commission entered its rate order (to provide New England a 5.6%, rather than 9%, increase in revenues) on the last day of the maximum eight months' suspension period authorized by 35 M.R.S.A. § 69. The Commission found that: (1) a "fair rate of return" to New England was 8.78%, and (2) the data deriving from the July 1, 1972–June 30, 1973 "test year" relied upon by New England, and accepted by the Commission as appropriate, established that a 5.6% increase in revenues would be sufficient to produce the "fair rate of return."

Within three weeks thereafter, on July 2, 1974, New England invoked Rule 5.1 of the Commission's Rules of Practice and Procedure and petitioned for an amendment of the Commission's June 13, 1974 order. The petition asked the Commission to take into account data then being offered for the first time by New England derived from the actual operating experience of the Company during the period July 1, 1973 through March 31, 1974. New England maintained that by utilizing the newly tendered data without change in methodol-

---

3. As here material, 35 M.R.S.A. § 69 states:
   " § 69. Public hearings to investigate proposed changes in rates of public utilities; suspension pending hearing
   "Whenever the commission receives notice of any change or changes proposed to be made in any schedule of rates filed with said commission under the provisions of law, it shall have power at any time before the effective date of such change or changes, either upon complaint or upon its own motion and after reasonable notice, to hold a public hearing and make investigation as to the propriety of such proposed change or changes. At any such hearing involving any change or changes as above specified, the burden of proof to show that such change is reasonable shall be upon the public utility. After such hearing and investigation, the commission may make such order with reference

to any new rate, joint rate, fare, rental, toll, classification, charge, rule, regulation or form of contract or agreement proposed as would be proper in a proceeding initiated upon complaint or upon motion of the commission in any rate investigation.
   "Pending such investigation and order, the commission may at any time within said period preceding the effective date of any such schedule, by filing with such schedule and delivering to the public utility affected thereby a statement of its reasons for said suspension, suspend the operation of such schedule or any part thereof, but not for a longer period than 3 months from the date of said order or suspension. If said investigation cannot be concluded within said period of 3 months, said commission may in its discretion extend the time of suspension for a further period of 5 months. . . . .."

ogy or principle, the Commission would be obliged to conclude that New England could achieve the fair rate of return—as found by the Commission itself (8.78%)—only if the June 13, 1974 order was modified to allow the revised rates yielding the 9% increase in revenues. New England requested the Commission to make such recomputation and to amend its June 13, 1974 order accordingly.

On July 15, 1974 the Commission denied New England's "petition to amend." The Commission supported its ruling with the reasoning:

"In the Commission's judgment there is substantial evidence within the record to support the conclusions of its June 13, 1974 Order. The entire proceeding including the June 13, 1974 Order was based on a test year selected by New England Telephone and Telegraph Company.

"The principal thrust of New England Telephone and Telegraph Company's petition for amendment, however, is to update the financial data in the case to a twelve month period ending March 31, 1974. In the Commission's judgment a change in the test period on which the evidence was taken represents the initiation of a new rate application; properly initiated by the filing of new rates; not by a 'petition for amendment.'

"Our Rule of Practice and Procedure 5.-1, pursuant to which New England Telephone and Telegraph Company has proceeded, contemplates the reopening and rehearing of a matter when this Commission finds that its order is unreasonable, unlawful or erroneous. We do not believe that to be the case in the instant proceeding. . . .."

New England thereupon initiated the instant Section 305 proceeding and, as an incident thereof, filed the motion for additional evidence now under consideration.

## 2. New England's Motion for Additional Evidence

The issue New England claims to raise for decision by its motion for additional evidence, and which the Commission has squarely joined, is extremely narrow. We take special precaution, therefore, at the outset of analysis, to describe its scope with precision.

The complaint of New England invoking the Section 305 jurisdiction of this Court alleges particular errors in the Commission's order of June 13, 1974 arising from within the confines of the evidentiary record on which the order rests. In its brief in support of its motion for additional evidence, however, as well as in oral argument, New England repeatedly has stressed that these errors are irrelevant to the issue New England raises by its motion for additional evidence. New England maintains that, notwithstanding that the evidence involved was proffered for the first time after rendition of the order of June 13, 1974 and regardless of whether or not substantive errors inhere in that order .on the basis of the evidentiary record on which the order rests, the motion for additional evidence must . be granted *solely because* the additional evidence shows that the June 13, 1974 order "results" (by virtue of the order's having gone into effect) in an inability of New England to earn the 8.78% rate of return found by the Commission to be New England's entitlement. In this respect, says New England, the additional evidence itself generates the issue that the Commission's order of June 13, 1974 results in "confiscation" of New England's property and thereby *by itself without more* establishes the jurisdiction of the Law Court under Section 305 and the Court's ancillary authority to take cognizance of the evidence.

The Commission agrees that the issue for decision is framed in this restricted

compass since the argument of the Commission lays stress on the point that New England

> ". . . presses no substantive errors, either as to law or fact, in . . . [the] Commission . . . order, but seeks merely to 'update' [it] . . . "

and thus relies upon the

> ". . . allegedly confiscatory *results* and *effect* . . . in the light of economic conditions occurring after the end of the test year selected by the Company and considered by the Commission."

With the issue thus couched, resolution of it requires that we concentrate on the significance of language appearing at the commencement of Section 305 and expressly stating that the Law Court has

> ". . . jurisdiction . . . to review, modify, amend or annul any ruling or order of the commission, *but only to the extent of the unlawfulness of such ruling or order."* (emphasis supplied)

New England maintains that "unlawfulness" in this opening sentence of Section 305 fails to require, as a condition precedent to the Law Court's jurisdiction under Section 305, that the Commission ruling or order (sought to be subjected to Section 305 "review") shall embody *substantive error in terms of the evidentiary record upon which the ruling or order is predicated.* New England emphasizes additional language in Section 305, that if ". . . confiscation of property or other violation of constitutional right results . . . " from any ruling or order of the Commission, the Law Court ". . . shall exercise its own independent judgment as to both law and facts", and in aid of this function the Law Court ". . . may order such additional evidence as it deems necessary . . . ." This language, says New England, renders immaterial to this Court's Section 305 jurisdiction whether an error inheres in the Commission's ruling or order (sought to be reviewed) as antecedently evaluated on the basis of the evidentiary record on which the order is founded. According to New England, that a ruling or order of the Commission "results" in ". . . confiscation of property or other violation of constitutional right" *without more* establishes the "unlawfulness of . . . " the Commission's ruling or order sufficient to confer jurisdiction under Section 305; and, therefore, any evidence, *no matter when proffered,* tending to generate such issue (of "unlawfulness") is properly brought forward under Section 305.

The Commission counters with the contention that the express limitation of the Section 305 jurisdiction of the Law Court to the "unlawfulness of . . . " a Commission ruling or order is calculated, insofar as Section 305 is concerned with "judicial review"—albeit in an "additional" scope,—to make indispensable one particular feature which, traditionally, has been an essential characteristic of a Court's "review" of the action of another tribunal:—*a claim of erroneous action* by the tribunal. Since, further argues the Commission, a tribunal can fairly be said to have *acted erroneously* only when it is found to have reached conclusions which are substantively incorrect *as measured by the evidentiary record on which its action rests,* the "unlawfulness of . . . " a Commission ruling or order contemplated by Section 305 can exist only as a substantive error in a Commission ruling or order measured in terms of the evidentiary record on which the Commission acted and predicated its ruling or order.

█ We agree with the Commission's interpretation of Section 305 and reject New England's position. We decide that since the Legislature introduces the mandate that the Law Court exercise independent judgment as to facts in a context in which the Legislature employs the word, "such", to indicate the kind of Commission "ruling or order" concerning which the Law Court's "independent judgment" will be operative, the Legislature has carried

over from the first sentence a requirement that Section 305 judicial "review" can be operative only if the Commission ruling or order in question contains some antecedent "unlawfulness" in the sense of a substantive error arising from the evidentiary record on which said Commission ruling, or order, is predicated. We hold, therefore, that the second sentence in Section 305 has the same meaning as if it had read:

> "If . . . confiscation of property or other *violation of constitutional right* results from . . . [a Commission] ruling or order [*otherwise antecedently unlawful*], the law court shall exercise its own independent judgment as to both law and facts."

It is thus indispensable to the existence of the jurisdiction conferred by Section 305 that a *substantive error initially arising from the evidentiary record upon which the Commission ruling or order sought to be reviewed rests* be asserted and pressed.

■ If this substantive error encompasses, *as constituted within itself,* " . . . confiscation of property or other violation of constitutional right . . .", the Law Court's review of the record made before the Commission is undertaken by the Law Court's exercising independent judgment on facts as well as law; and the Law Court has authority to amplify said record by ordering additional evidence to be taken to clarify the scope and reach of the constitutional issue thus raised. Lewiston, Greene and Monmouth Telephone Company et al. v. New England Telephone and Telegraph Company, Me., 299 A.2d 895 (1973) (hereinafter *"L. G. & M."*).

■ If, however, the substantive error arising from the evidentiary record underlying the Commission's order is not inherently of constitutional dimension but overlays of constitutional violation attach to it by virtue of extraneous results it *causes* by being embodied in a Commission order which has gone into effect, the Law Court has two separate functions under Section 305. First, the Law Court searches the evidentiary record made before the Commission according to the conventional standard of review to ascertain whether, on the principle that the Commission's findings of fact are controlling if supported by substantial evidence, the Commission has been guilty of a (non-constitutional) error of law. Second, *if, and provided that,* the Law Court concludes that there exists such antecedent error of law in terms of the evidentiary record made before the Commission, the Law Court then has power to consider the constitutional overlays claimed to be results caused by the error of law antecedently found to exist in the Commission's ruling or order under review; and as to these subsequent and separate constitutional facets—i. e., whether the error antecedently found existent (1) *causes* such effects as are (2) a *confiscation of property or other violation of constitutional right* —the Law Court exercises independent judgment as to facts as well as law and in the discharge of such function may look to additional evidence bearing upon the constitutional facets.

■ By this interpretation of Section 305 *both* Section 303 (of 35 M.R.S.A.) and Section 305, as concerned with "judicial review" of administrative action, share in common one minimally requisite feature: —that it is indispensable to the Law Court's jurisdiction under both Section 303 and Section 305 that a claim be asserted of substantive error antecedently inhering in a ruling or order of the Public Utilities Commission assessed in terms of- the evidentiary record made before the Commission and on which the Commission's ruling or order (sought to be subjected to "review") is founded.

■ Section 305, however, differs from, and goes beyond, Section 303 to provide "additional judicial review" in two respects. First, under Section 305 the Law Court may "review" *any* ruling or order of the Commission whether "interlocutory" or

"final", whereas under Section 303 the Court's jurisdiction is confined to "final" Commission rulings or orders. Second, under the "Section 303 appeal" the Law Court's ultimate determination of the existence of substantive error in the ruling or order of the Commission, *constitutional* or otherwise, must be undertaken strictly from within the confines of the evidentiary record made before the Commission. Under Section 305, however, when it is claimed before the Law Court that (1) there is substantive error in a Commission ruling or order in terms of the evidentiary record made before the Commission, and (2) said error, either in itself or by the extraneous "results" it causes (insofar as it is embodied in a Commission order which goes into effect), "involves" a confiscation of property or other violation of constitutional right, the Law Court has authority to amplify that record by directing the taking of additional evidence to enable the Court fully to explore the constitutional facets inherent in, or attaching to, the error antecedently arising from the record made before the Commission.[4]

To preclude such interpretation of Section 305 New England invokes language appearing in *L. G. & M.*, supra, that in Section 305 the

> " . . . Legislature . . . afforded to the Law Court the fullest opportunity adequately to discharge a responsibility, reasonably interpretable as constitutionally imposed, of evaluating and deciding alleged constitutional infirmities in administrative action by an independent judicial judgment as to facts (as well as law), unhampered by inadequacies which the Court might find to exist in the record of the proceedings as made before the Commission." (299 A.2d p. 905)

This language was used in a context in which substantive errors of law were being pressed as arising from within the confines of the record actually made before the Commission and on which the Commission's order under review was rested; and these errors of law had constitutional dimension *within themselves* rather than by virtue of the extraneous results caused by their being embodied in an effective Commission order. *Within such framework* this Court, by the language above-mentioned, was clarifying that since the substantive errors claimed to arise from the evidentiary record on which the Commission acted were, *as such,* constitutional errors, the Law Court was not confined to the record made before the Commission but had authority, under Section 305, to order the taking of additional evidence to assist it in exercising its own independent judgment on the facts (and law) involved in the constitutional questions.

The language of *L. G. & M.* thus fails to support New England's present effort to eliminate substantive error of the Commission deriving from the evidentiary record made before the Commission as a pre-condition of the Law Court's jurisdiction under Section 305.

This rationale differentiating *L. G. & M.* from the instant circumstances and contentions applies with equal cogency to the Massachusetts decisions cited by New England: New England Telephone and Telegraph Company v. Department of Public Utilities, Mass., 275 N.E.2d 493 (1971); Boston Gas Company v. Department of Public Utilities, 359 Mass. 292, 269 N.E.2d 248 (1971); New England Telephone & Telegraph Company v. Department of Public Utilities, 331 Mass. 604, 121 N.E.2d 896 (1954); Boston Consolidated Gas Company v. Department of Public Utilities, 327

---

4. Arguably, Section 305 may differ from Section 303 in a third respect suggested by us in *L. G. & M.*, supra, 299 A.2d n. 8 at pp. 903, 904. We there noted that since under Section 303 the "appeal" is confined to "questions of law in the same manner as an appeal from a judgment of the Superior Court in a civil action", the Law Court might be bound, even as to a *constitutional* error alleged in a "Section 303 appeal", to accept the facts as found by the Commission on substantial evidence and would be precluded from exercising independent judgment as to the facts involved in the constitutional question.

Mass. 103, 97 N.E.2d 521 (1951); Lowell Gas Company v. Department of Public Utilities, 324 Mass. 80, 84 N.E.2d 811 (1949). In each of these cases the Court had before it a situation in which the Commission order under review embodied antecedent substantive errors flowing from the evidentiary record made before the Commission, errors either of constitutional dimension within themselves or operative as the source of extraneous constitutional overtones.

The New York decision of New York Telephone Company v. Public Service Commission, 29 N.Y.2d 164, 324 N.Y.S.2d 53, 272 N.E.2d 554 (1971) cited by New England is similarly distinguished. In that case *before the Commission had rendered the order subject to review* the Company had filed with the Commission a petition to reopen the Commission's hearings to enable the Company to present to the Commission the Company's actual operating experience subsequent to the test year on which the earlier hearings had concentrated. The refusal of the Commission to accept such evidence, as offered to it at a time when it still had reasonable opportunity to give it consideration relative to the order it was later to enter, was a substantive error inhering in the Commission's order as assessed by the totality of the evidentiary record preceding the order. Insofar as this antecedent independent error by the Commission could fairly be looked upon as a cause of confiscation resulting from the effectiveness of the Commission's order, the decision of the New York Court requiring that additional evidence be taken and the final order of the Commission be re-evaluated upon a record as thus amplified is consistent with our interpretation of Section 305.

■ Anticipating the possibility of an interpretation of Section 305 as herein now adopted, New England has sought to avoid it by arguing that it would render Section 305 unconstitutional on its face. We disagree.

In *L. G. & M.* we considered (299 A.2d in n. 12 at pp. 905 et seq.) the impact of Alabama Public Service Commission v. Southern Railway Company, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) upon the federal constitutional doctrine previously announced in Ohio Valley Water Company v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920) and St. Joseph Stock Yards Company v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1936). In *L. G. & M.* we concluded that *Alabama Public Service Commission* had failed to attenuate *Ben Avon* and *St. Joseph Stock Yards* to the extent of upholding the constitutionality of a proceeding by which the judicial review of the constitutionality of a Commission's rate-fixing order was confined to the record made before the Commission.[5]

Simultaneously, however, we further explained in *L. G. & M.* that *Alabama Public Service Commission* had "reduced and abridged" *Ben Avon* and *St. Joseph Stock Yards* by eliminating the necessity of a "plenary de novo" judicial review. Thereby, we clarified that we viewed *Alabama Public Service Commission* as supporting the constitutionality of an approach to the judicial review of Commission rate-fixing orders which: (1) seeks to maintain the integrity of the Commission's "primary jurisdiction"[6] by requiring the presence of error derived from the evidentiary record on which the Commission acts as constituting the skeletal structure of judicial re-

5. We stated in *L. G. & M.* that *in this particular respect* we agreed with the analysis of the Justices of the Supreme Judicial Court of Massachusetts as presented in Opinion of the Justices, 328 Mass. 679, 106 N.E.2d 259 (1952).

6. See: Atchison, Topeka & Santa Fe Railway Company v. Wichita Board of Trade, 412 U.S. 800, 820, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973); Texas and Pacific Railway Company v. Abilene Cotton Oil Company, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); Texas & Pacific Railway Company v. American Tie & Timber Co., Ltd., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255 (1914); Jaffe, Judicial Control of Administrative Action, pp. 121 et seq.

view, and (2) provides the "fleshing out" requisite if such underlying antecedent error assumes constitutional dimension—either in itself or by extraneous effects it causes—by authorizing the Court to exercise independent judgment as to the facts involved in the constitutional facets and, in aid of this function, to amplify the record made before the Commission with additional evidence relevant to the constitutional matters.

We are satisfied, therefore, that our present interpretation of Section 305 projects no violation of the federal Constitution. Moreover, we see no reason to conclude that in this context the Constitution of Maine should be held to impose requirements stricter than those of the Constitution of the United States.

We are buttressed in our conclusion by language recently used by the Supreme Court of the United States in United States v. Interstate Commerce Commission (Northern Lines Merger Cases), 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970) quoting from I. C. C. v. City of Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944). In these cases the Court strongly discountenances that an order otherwise "lawful" takes on "unlawfulness" solely because of its effects as caused by circumstances newly supervening during a lengthy interval between close of the evidentiary record and rendition of the order. The Court said:

"Administrative consideration of evidence . . . always creates a gap between the time the record is closed and the time the administrative decision is promulgated. This is especially true if the issues are difficult, the evidence intricate, and the consideration of the case deliberate and careful. If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening. It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a reviewing body." (p. 521 of 396 U.S., p. 722 of 90 S.Ct. quoting from pp. 514, 515 of 322 U.S., 64 S. Ct. 1129.)

■ Thus, under our interpretation of Section 305 had New England omitted to file with the Commission its "petition to amend" requesting the Commission to take cognizance of the additional evidence proffered (after rendition of the Commission's order) and to amend its order, and had directly invoked this Court's jurisdiction under Section 305 for judicial review of the Commission's order of June 13, 1974—filing as an incident thereof its motion for additional evidence pressed in the posture in which it is presently advanced,—this Court would lack statutory authority to grant the motion for additional evidence. The fatal deficiency would be that in terms of the evidentiary record on which it rested, the Commission order lacked the antecedent "unlawfulness" essential under Section 305 to the Law Court's "jurisdiction . . . to review . . . ."

■ The ultimate question to be answered, then, is whether a different result is here required because New England, before coming to this Court, petitioned the Commission to take cognizance of the newly tendered evidence to amend its June 13, 1974 order, and the Commission entered a supplemental order denying New England's petition for amendment.

In its Section 305 complaint to this Court New England has alleged that the refusal of the Commission to act as requested by New England's "petition for amendment" was error of law; and in its brief and at oral argument *this particular*

*error of law* has been emphatically pressed by New England in support of its motion for additional evidence.

Hence, if the Commission's denial of New England's "petition for amendment" was error of law, there would be, in accordance with our interpretation of Section 305, "unlawfulness of . . ." the order in terms of the totality of the record made before the Commission. This "unlawfulness of . . ." the order denying the "petition for amendment" would establish our jurisdiction under Section 305 and also our ancillary authority, relative to the "confiscation" alleged to be the "result" of such "unlawful" order, to direct the Commission to amplify the record by taking the additional evidence proffered by New England.

The crucial question is thus whether the Commission committed error of law in denying New England's petition for amendment.

The view of the Commission was that a petition for amendment under Rule 5.1 of its Rules of Practice and Procedure

" . . . contemplates the reopening and rehearing of a matter when this Commission finds that its order is unreasonable, unlawful or erroneous."

Concluding that New England's "petition for amendment" did not tender an issue of such character but was really a new rate-filing in disguise, the Commission denied the petition.

Although in strict procedural terms the Commission may be technically correct, the larger question remains whether, insofar as New England was seeking to have the Commission prevent a claimed persistence of "confiscation" of New England's property as an alleged "result" of the Commission's June 13, 1974 rate-fixing order, the Commission committed error of law in failing to give consideration to the substance of the petition for amendment.

In Atchison, Topeka & Santa Fe Railway Company v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932) the Supreme Court of the United States confronted a situation involving a petition for rehearing, on the basis of newly tendered evidence, filed with the Interstate Commerce Commission after the Commission had rendered a rate-fixing order. The Court observed:

"Ordinarily, a petition for rehearing is for the purpose of directing attention to matters said to have been overlooked or mistakenly conceived in the original decision and thus invites a reconsideration upon the record upon which that decision rested. The . . . petition for rehearing, in this proceeding, was not of that character. It was of the nature of a supplemental bill. It presented a new situation, a radically different one, which had supervened since the record before the Commission had been closed . . . . It asserted that whatever might be the view of the order when made, and upon that record, a changed economic condition demanded reopening and reconsideration." (pp. 259, 260, 52 S.Ct. p. 149)

In *Atchison* the Supreme Court of the United States decided that notwithstanding the conventional principles appropriate for the evaluation of a petition for rehearing (as a petition filed after rendition of a decision), in the special situation there involved the Commission should have treated the petition before it in terms of its substance showing " . . . a changed economic level" by virtue of which

" . . . overruling economic forces . . . [had] made the record before the Commission irresponsive to present conditions." (pp. 261, 262, 52 S.Ct. p. 150)

On this basis, the Supreme Court of the United States concluded in *Atchison* that since

" . . . the hearing accorded related to conditions which had been radically

changed, and a hearing, suitably requested, which would have permitted the presentation of evidence relating to existing conditions, was denied . . .",

the Commission had acted beyond its ". . . permitted range of . . . discretion" and had caused "a denial of right." (p. 262, 52 S.Ct. p. 150)

Is the *Atchison* approach appropriate here insofar as New England's "petition for amendment" sought to have the Commission take into account data developed in important part subsequent to the close of hearings and allegedly establishing that changed conditions had made the Commission's order of June 13, 1974 "out of date?"

In I. C. C. v. Jersey City, supra, the Supreme Court of the United States observed that in prior decisions it had referred to *Atchison* as the instance in which

"[o]nly once in the history of administrative law . . . this Court reversed a Commission for refusing to grant a rehearing on the contention that the record was 'stale.'" (p. 515 of 322 U.S., p. 1135 of 64 S.Ct.)

The Court thereupon re-emphasized that *Atchison* involved "exceptional facts" and must be restricted to them. (p. 515, 64 S. Ct. 1129) See also: United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 534, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Cf. United States v. Interstate Commerce Commission (Northern Lines Merger Cases), supra, 396 U.S. at pp. 520, 521, 90 S.Ct. 708.

As relegated to its peculiar facts, *Atchison* plainly cannot be a precedent for a conclusion, here, that the Public Utilities Commission was guilty of a "denial of right" when it rejected New England's "petition for amendment."

In the instant situation we face an administrative "lag" between the final close of hearings (January 23, 1974) and the Commission's order rendered on June 13, 1974 of less than five months in contrast to the three year interval involved in *Atchison*. The changes in economic conditions here adduced by New England have only the barest, if any, resemblance to the cataclysmic proportions of the economic fluctuations of the "great depression" of the early 1930's which were before the Court in *Atchison*. The situation, here, is significantly more closely akin to the "usual" kinds of "fluctuating conditions" as to which the Court in *Atchison* found it "appropriate" to say:

"'in performing its legislative function of prescribing reasonable rates, the Commission necessarily projects into the future the results of a decision based on the conditions disclosed in the record,' and . . . its determination 'cannot reflect accurately fluctuating conditions.'" (p. 261, 52 S.Ct. p. 150)

Further, the data here tendered for the first time by New England after the Commission had rendered its June 13, 1974 order derived from the Company's own operations during the period July 1, 1973 through March 31, 1974. Clearly, the bulk of the data was thus available to New England for several months prior to the entry of the Commission's order so that New England had reasonable opportunity to request a reopening of hearings before entry of the Commission's order on June 13, 1974. Yet, New England failed to take advantage of the opportunity. In the words of Mr. Justice Brandeis, speaking in his concurring opinion in Baltimore & Ohio Railroad Company v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209 (1936) in which he continued the process, begun in United States v. Northern Pacific Railway Company, 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914 (1933), of confining *Atchison* to its "exceptional facts", the data newly offered by New England in its "petition for amendment"

". . . were not, in a legal sense, newly discovered evidence. There was a belated offering of evidence in support of

a belated contention." (p. 388 of 298 U. S., p. 816 of 56 S.Ct.)

Relative to the point noted in American Trucking Associations, Inc., v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953) that the Supreme Court of the United States has

". . . admonished the Commission and the courts to permit introduction of evidence on the economic impact of a rate order where the claim that it could not have been proffered during the original proceedings was genuine", (p. 322, 73 S.Ct. p. 320)

the Supreme Court of the United States further stated:

". . . the inability to test the question before the Commission [must be] patent . . . ." (p. 321, 73 S.Ct. p. 320)

Since during several months prior to the Commission's order of June 13, 1974, New England had reasonable opportunity to ask for a reopening of the hearings for Commission consideration of the additional data then available, there is, here, no "genuine" claim by New England of "patent" inability to offer the data to the Commission at a reasonable time prior to the rendition of the Commission's order.

We conclude, therefore, that the present situation falls within the principle enunciated in I. C. C. v. Jersey City and United States v. Pierce Auto Freight Lines, Inc., both supra, and recently reiterated and applied in United States v. Interstate Commerce Commission (Northern Lines Merger Cases):

"' . . . rehearings before administrative bodies are addressed to their own discretion. . . . Only a showing of the clearest abuse of discretion could sustain an exception to that rule.'" (p. 521 of 396 U.S., p. 723 of 90 S.Ct.)

See: Augusta Water District v. White, Me., 216 A.2d 661, 664 (1966).

We decide that in the totality of the circumstances here involved the Commission's denial of New England's "petition for amendment" was not a violation of right but an exercise of discretion reposed in the Commission.

New England's motion for additional evidence, in the posture in which it has been presently advanced to this Court, is denied.

3. *The Commission's Motions to Dismiss.*

One of the Commission's motions for dismissal rests on a claim that this Court lacks jurisdiction of the subject-matter.

As we have previously observed, New England's complaint alleges errors of law in the Commission's order of June 13, 1974: (1) in terms of the evidentiary record made before the Commission and upon which the Commission's order was predicated, and (2) as a cause of a confiscation of property alleged as the result of that order. These allegations, under our interpretation of Section 305, are sufficient to bring into play the Section 305 jurisdiction of this Court.

Although New England's argument in support of an *exercise* of jurisdiction by this Court to grant a motion for additional evidence disclaimed that the above-described errors alleged in the complaint have relevance to the issue raised by the motion for additional evidence, and although we have decided the instant motion for additional evidence strictly in that context, we cannot fairly say that *for all purposes* of this Section 305 proceeding New England has waived the above-described errors alleged in the complaint. Without in any manner suggesting a course to be followed by New England, we note that since our disposition of New England's present motion for additional evidence does not terminate the pendency of the complaint upon the docket of this Court, it remains open to New England to proceed on

its complaint in the immediate future in such further respect as it may consider appropriate.

The Commission's motion to dismiss New England's complaint on the ground that this Court lacks jurisdiction of the subject-matter of the cause is, therefore, denied.

■■■ As to the Commission's motion that we dismiss the case for mootness in light of New England's new rate-filing on October 8, 1974 and request, on October 25, 1974, that the new rate-filing be given interim effectiveness, we hold that these supervening events fail to render moot the instant proceeding.

Notwithstanding New England's new rate-filing, New England still has opportunity in the instant proceeding to seek to establish that (1) there were substantive errors in the June 13, 1974 order of the Commission in terms of the evidentiary record on which that order rests, and (2) those errors in light of the additional evidence newly proffered by New England are the cause of a confiscation of New England's property. Were New England to adopt such a position, this Court, were it to find such claims of New England meritorious, could in this proceeding afford relief to New England by requiring a modification of the June 13, 1974 order to allow New England increases in its revenues above the 5.6% increase presently authorized under the June 13, 1974 order and not to exceed a maximum of the 9% increase sought by New England's September 13, 1973 rate-filing; and such relief could provide actual pecuniary benefit to New England should . it become operative before a Commission decision granting interim effectiveness to New England's new rate-filing or, in the event of a decision denying such interim effectiveness, prior to the Commission's entry of a new rate-fixing order.

The instant Section 305 proceeding is, therefore, not moot. The Commission's motion to dismiss for mootness is denied.

The entries are:

(1) The Commission's "Motion to Dismiss" (for lack of subject-matter jurisdiction) is Denied.

(2) The Commission's "Motion to Dismiss" (for mootness) is Denied.

(3) New England's "Motion for Additional Evidence" is Denied.

(4) . The cause is continued until further order of this Court.

All Justices concur.