STATE of Maine ex rel. Joseph E. BREN-
NAN, Attorney General and the Board
of Environmental Protection

v.

R. D. REALTY CORPORATION.

Supreme Judicial Court of Maine.

Dec. 18, 1975.

Cabanne Howard, Asst. Atty. Gen., Augusta, for plantiff.

Marshall, Raymond & Beliveau by John G. Marshall, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

The jurisdiction of the Maine Board of Environmental Protection to issue or deny approval of a development under the Site Location of Development statute, 38 M.R.S.A. § 481 et seq., is in issue in this case as a result of the denial of a permanent injunction.

That appellee, R. D. Realty Corporation is creating a subdivision within the meaning of 38 M.R.S.A. § 482(5) is not denied.

Also agreed is that appellee did not "notify the commission in writing of his [sic] intent and of the nature and location of such development" before commencing its construction. 38 M.R.S.A. § 483.

The complaint for injunction was denied as the result of a finding by the Court that the claim asserted by appellee that it was exempt from the provisions of the Act under the provisions of 38 M.R.S.A. § 488 [1] was valid.

This appeal by the State was seasonably entered following the denial of a complaint for injunction.

We deny the appeal.

The facts are not in dispute. In late 1966 or early 1967, the property in question was acquired by the Dube family. A corporation was subsequently formed with family members as sole stockholders with the intention of developing the area sufficiently to permit the sale of lots.

In 1967 a contractor was hired to clear 5 miles of rough roads to enable prospective purchasers to be shown the property during periods of favorable weather.

In that same year a cottage was built on the property. The cottage was used as an office and occasionally as an overnight dwelling. Electricity was connected to the cottage. A small area was cleared and made suitable for use as a small airplane landing area.

In 1968 an engineer was employed to prepare a rough plan of the area and to cause the lot sketched on the plan to be generally indicated on the surface of the earth. This work was completed during that year.

Many thousands of dollars have been expended by the developer in preparation of the development for the sale of lots.

All these facts were found as fact by the presiding Justice.

The complaint for injunction was in two Counts.

Count I of the complaint alleged a violation of the Site Location of Development law, 38 M.R.S.A. § 481 et seq.

Count II alleged violation of the municipal subdivision law, 30 M.R.S.A. § 4956.

1. "This Article shall not apply to any development in existence or in possession of applicable state or local licenses to operate or under construction on January 1, 1970 . . . ."

In ruling as he did the presiding Justice based his conclusion that there was no violation of law on Sec. 488 of 38 M.R.S.A. and Sec. 4956 of 30 M.R.S.A.

Sec. 488 provides that:

"This Article shall not apply to any development in existence or in possession of applicable state or local license to operate or under construction on January 1, 1970."

The conclusion which the Justice below reached was:

"I find that this development was 'under construction' on January 1, 1970, and therefore is exempted by section 488 from application of the Site Location of Development Law."

As to Count II of the complaint, the Justice referred to 30 M.R.S.A. § 4956, paragraph 5, which reads as follows:

"This section shall not apply to proposed subdivisions approved by the planning board or the municipal officials prior to September 23, 1971 in accordance with laws then in effect nor shall they apply to subdivisions as defined by this section in actual existence on September 23, 1971 that did not require approval under prior law . . . ."

He then concluded as follows:

"I find that the area under consideration was subdivided prior to September 23, 1971 and that the lots were actually surveyed and marked either by steel pins or regular markers and numbered at a time when no approval was required by the municipality under prior law and therefore was exempted by the terms of 30 M.R.S.A. Section 4956."

The "prior law" was the municipal subdivision law as it read in 1964. This section provided, among other things, "A municipality may regulate the subdivision of land."

At all times material hereto the Town of Phippsburg had no regulation controlling the subdivision of land. The State points to subsection B of Section 1, 30 M.R.S.A. § 4956, which reads, in part, as follows:

"In a municipality which does not have a planning board, the municipal officers shall act in its stead for the purposes of this section."

This, the appellant says, requires that the municipal officers give approval to a proposed subdivision before it can be lawfully made, even though the municipality has no planning board and has adopted no regulations for subdivisions.

With this argument we cannot agree.

30 M.R.S.A. § 4956 came into being as a result of Public Laws of Maine, 1957, Chapter 405. This Chapter was entitled "An Act Revising the General Laws Relating to Municipalities." Section 1 amended the Revised Statutes by adding thereto a new chapter, which it numbered 90-A.

Section 61 of Chapter 90-A (of which subdivision of land is a part), provides:

"A municipality *may* act for the purpose of municipal development according to the following provisions." (Emphasis supplied)

Among those provisions is that with which we are presently concerned: "A municipality *may* regulate the subdivision of land."

This was merely an Enabling Act.

Certainly it cannot be argued that the Selectmen of the Town of Phippsburg had authority to regulate the subdivision of land in the absence of any ordinance enacted pursuant to this Enabling Act. Since the Town of Phippsburg did not see fit to adopt a subdivision ordinance until long after the subdivision was commenced in 1967, we think it apparent there was no

requirement of municipal approval for the subdivision at that time.

■ We read the section to which appellant refers, i. e.,

"In a municipality which does not have a planning board, the municipal officers shall act in its stead for the purposes of this section."

to mean that in any municipality which had adopted a land subdivision ordinance or regulation (which Phippsburg had not) if there was no planning board in the municipality which could approve the plat of a proposed subdivision, the municipal officers were directed to act in the stead of a planning board for the purpose of giving approval.

In the absence of a duly enacted regulation for subdivisions no municipal officer's approval was required for a subdivision under the statute as it read at the time this subdivision was undertaken.

We hold the presiding Justice was correct in his conclusion that the subdivision in this case was made at a time when no approval was required by the municipality. 30 M.R.S.A. § 4956.

Appellant directs attention to 30 M.R.S.A. § 4956 and observes that to be free of the application of the municipal subdivision law, the subdivision must have been "in actual existence" on September 23, 1971.

The Legislature's intention, the appellant says to quote from its brief, is clear "that in the case of projects for which municipal approval was not required only those actually completed by September 23, 1971, would qualify for grandfather's rights."

Again we must disagree.

The statute uses the words "in actual existence" and not the words "actually completed."

What was "in actual existence?"

The answer is: "Subdivision as defined by this section."

What section?

The answer is: "Section 9456, paragraph 5, of 30 M.R.S.A."

A subdivision was defined by the Act in effect at all times material to this case as "A division into three or more lots in urban areas or four or more lots in rural areas . . . ."

There is no dispute in this case but that there had been a division of the total parcel of land into many lots and as the presiding Justice found: "these lots were actually surveyed and marked by steel pins or regular markers and numbered" before September 23, 1971, the critical date under the statute.

■ We are satisfied then that the presiding Justice was correct in his finding that the subdivision was "in actual existence" within the meaning of the applicable statute.

■ We likewise conclude the presiding Justice was correct in his finding that 38 M.R.S.A. § 488 exempted this development from the application of the Site Location of Development law because "the development was under construction on January 1, 1970."

The appellant argues that the appellee had abandoned whatever "grandfather" rights which existed because, it says, nothing was done to prosecute the development for a period of five years.

The presiding Justice found as fact based on believable evidence that there was active and continuous development of the project during the years 1967, 1968 and 1969.

In view of this finding which is supported by credible evidence, it becomes unnecessary to discuss what period of inactivity will justify a conclusion there has been an abandonment of the subdivision.

That the Superior Court had jurisdiction of the subject matter and the parties is undoubted.

That this Court had jurisdiction to consider and decide the appeal from the denial of the injunction by the Superior Court Justice is likewise apparent.

We have, therefore, reviewed this record and have concluded that the complaint for an injunction was properly denied. This is our decision in the case.

However, we do have another concern. This is a matter which was not raised by the parties, either in their briefs or at oral argument, but which we choose to discuss in some detail.

The complaint for injunction recites that "the plaintiff, Attorney General of the State of Maine, is acting for himself and on behalf of the Board of Environmental Protection."

Two separate and distinct statutes, he alleges, are authority for the action taken: to wit, 38 M.R.S.A. §§ 481–488 [2] and 30 M.R.S.A. 4956.

38 M.R.S.A. § 486 provides as follows:

"All orders issued by the commission under this subchapter shall be enforced by the Attorney General. If compliance with any order of the commission is not had within the time period therein specified, the commission shall immediately notify the Attorney General of this fact. Within 30 days thereafter the Attorney General shall bring an appropriate civil action designed to secure compliance with such order."

30 M.R.S.A. § 4956(5) provides in part that:

"The Attorney General, the municipality or the appropriate municipal officers may institute proceedings to enjoin the violation of this section."

38 M.R.S.A. § 485 contains, among other things, provision that the Environmental Improvement Commission

"may at any time with respect to any person who has commenced construction or operation of any development without having first notified the commission pursuant to section 483, schedule and conduct a public hearing in the manner provided by section 484 with respect to such development."

The following paragraph in Section 485 provides that the Commission

"may request the Attorney General to enjoin any person, who has commenced construction or operation of any development without first having notified the commission pursuant to section 483, from further construction or operation pending such hearing and order."

It thus becames clear that the statutory scheme envisions that ordinarily the Environmental Improvement Commission will make the determination that a development is or is not exempt from regulation by the Environmental Improvement Commission, in the first instance. The scheme contemplates judicial participation in determining the question in issue only after such issue is preliminarily resolved by the Commission after hearing, unless

(a) it clearly appears the issue is only one of law, or

(b) harm will result before the Commission can act if it is ultimately found the development is not exempt from regulation by the Commission, (in which case the status quo is maintained "pending such hearing and order" (under 38 M.R.S.A. § 485)).

The judicial participation is usually initiated either by appeal from the Commission's Order under the provisions of 38 M.R.S.A. § 487 in which case appeal is to

**2.** Provision for judicial review of any order of the Board of Environmental Protection is found in 38 M.R.S.A. § 487.

the Supreme Judicial Court sitting as a Law Court[3] or by invoking 38 M.R.S.A. § 486, in which case "appropriate civil action" (i. e., complaint for injunction), is initiated in the Superior Court.

In *In Re Spring Valley Development,* Me., 300 A.2d 736 (1973), one of the issues was, as here, whether or not the action of the developer was subject to regulation by the Environmental Improvement Commission or exempt therefrom by the "grandfather clause."

There, as here, the Commission learned of the developer's activity, even though it had given no notice to the Commission of its intended development.

Upon learning of the developer's activities the Commission gave notice of hearing as provided by 38 M.R.S.A. § 483 and proceeded to adjudicate the issue.

When that issue was decided adversely to the developer, appeal was taken to the Supreme Judicial Court sitting as the Law Court pursuant to 38 M.R.S.A. § 487.

When judicial participation in the controversy was invoked there had already been a preliminary resolution of the issues by the Commission, which determination was made after hearing pursuant to Section 483.

■ We decide that in all future cases determination that a development is subject to regulation by the Environmental Improvement Commission, or exempt therefrom by the "grandfather clause" (38 M.R.S.A. § 488), should be made preliminarily by the Commission itself. Judicial intervention in the controversy will take place prior to any administrative determi-

nation only in those rare instances where the issue is solely one of law or where the relief sought is beyond the capacity of the administrative agency to give, or where injunctive relief is sought under 38 M.R.S.A. § 485 to maintain the status quo "pending such hearing and order."[4]

We see "the doctrine of primary jurisdiction" as the occasion for this rule.[5]

In *Stanton v. Trustees of St. Joseph's College,* Me., 233 A.2d 718 (1967), we accepted the "doctrine of exhaustion of administrative remedies" as a general principle.

We recognize that the "doctrine of primary jurisdiction" is somewhat different from the "doctrine of exhaustion of administrative remedies" and of "ripeness."

Nevertheless, they are closely akin. *Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed. 2d 470 (1958).

■ "Primary jurisdiction" and "exhaustion of administrative remedies" are both closely allied in basic function and concept. Each rests on the premise that an agency has the primary authority to make certain decisions deemed relevant to the determination of the controversy.

■ "Exhaustion" emerges as a defense to judicial review of an administrative action not as yet deemed complete.

■ "Primary jurisdiction" determines whether the Court or the agency should make the initial decision. *United States v. Western Pac. R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

---

3. See: *King Resources Co. v. Environmental Improvement Commission,* Me., 270 A.2d 863 (1970).

4. We can envision the situation in which a developer may go on the site of a development with large earth-moving equipment and in a matter of hours make irreparable changes in the contour of the earth. In a case such as this, for example, a petition by the Com-

mission for injunctive relief ought be entertained.

5. See: *Atchison, Topeka & Santa Fe Railway Company v. Wichita Board of Trade,* 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973); see also *New England Telephone & Telegraph Co. v. Public Utilities Commission,* Me., 329 A.2d 792, 801 (1973).

■ The "doctrine of primary jurisdiction" is not an attempt to allocate power between the courts and the administrative agencies. Authorities agree "the doctrine of primary jurisdiction" was established in *Texas & Pac. Railway v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553 (1907). While in that decision there was no explicit reliance on Commission expertise as the controlling consideration, later cases rationalized the application of the rule on that basis.

■ As a matter of *judicial policy* we will generally not decide an issue concerning which an administrative agency has decision capacity until after the agency has considered the issue.

One of the obvious results of the creation of the Maine Board of Environmental Protection is that an agency has been created which has developed an expertise in resolving the special problems with which it is, by law, required to become concerned. Merest prudence suggests that the courts ought to have the benefit of the Commission's prior expert evaluation of controverted facts, before it intervenes in a controversy over which the Commission has jurisdiction, (except to use legal processes to maintain the status quo pending hearing and decision of the issue in controversy *by the Commission.*)

An example of the application of this rationale by this Court is *Lewiston, Greene & M. T. Co. v. New England T. & T. Co.,* Me., 299 A.2d 895 (1973). There this Court was concerned with 35 M.R.S.A. § 305. That section provides, in part:

". . . [I]n all cases in which the justness or reasonableness of a rate, toll or charge by any public utility or the constitutionality of any ruling or order of the commission is in issue, the law court shall have jurisdiction upon a complaint to review, modify, amend or annul any ruling or order of the commission, but only to the extent of the unlawfulness of such ruling or order. If in such complaint it is alleged that confiscation of property or other violation of constitutional right results from such ruling or order, the law court shall exercise its own independent judgment as to both law and facts."

Even though the statute by its express terms directed that the Law Court exercise its own independent judgment, both as to law and facts, we ordered that

". . . [T]he Public Utilities Commission is herewith directed promptly to take out evidence, in accordance with the foregoing delineations, from New England and any other of the parties who might wish to present evidence.

"After it has heard and taken such addition evidence the Commission, as it deems appropriate by reason thereof, is authorized, in accordance with Section 305, to modify its original findings, conclusions and Order, or to make new findings and conclusions and a new Order.

"The Commission shall report all the additional evidence which it has taken to the Law Court promptly and in manner such that, as required by Section 305,

"'. . . the proof may be brought as nearly as possible down to the date of its report thereof to the court.'

"If the Commission has modified its original findings of fact or made new findings of fact, or modified its original Order, or made a new Order, it shall file with the Law Court such modified findings of fact or Order or such new findings of fact or Order, if any."

This Court had earlier established the principle that even where independent judgment as to facts is mandated, the Law Court

". . . may nonetheless exercise the prescribed 'independent judgment' as to facts and yet in that very process be 'informed and aided' by findings of the Public Utilities Commission." *Central*

*Maine Power Company v. Public Utilities Commission,* 156 Me. 295, 304, 163 A. 2d 762, 768 (1960).

In the case now before us the Board of Environmental Protection has capacity to determine the mixed question of law and fact as to whether the development being operated by the defendant is or is not exempt from the requirements of 38 M. R.S.A. § 481 et seq.

As to all cases arising subsequent to this date, determination of all issues within its legal capacity should be made by the administrative tribunal before judicial intervention will be invoked, except in those instances earlier described.

In this case the factual basis for the denial of injunctive relief has been thoroughly developed before the Justice of the Superior Court. The issues of law have been ably presented by both counsel. Under the circumstances we consider it appropriate to decide this case.

The entry must be,

Appeal denied.

All Justices concurring.